IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01183-ZLW-CBS

DEREK I. ALLMON,
         Plaintiff,
v.

BUREAU OF PRISONS,
MICHAEL K. NALLEY, Dir.,
R.V. VEACH, Warden,
R. WILEY, Warden,
MR. CHURCH, Captain,
K.O. BRECHBILL, Lieutenant, and
L. BRAREN, SIS Tech,
         Defendants.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on: (1) Defendants' "Motion to Dismiss Prisoner Complaint" (filed September 29, 2008) (doc. # 20); and (2) Mr. Allmon's "Request [Motion] for Injunction Against Bureau of Prisons and Warden Ron Wiley" (filed May 28, 2009) (doc. # 62).[1][2] Pursuant to the Order of Reference dated July 23, 2008 (doc. # 8) and the memoranda dated September 30, 2008 (doc. # 21) and May 28, 2009 (doc. # 63), these matters were referred to the Magistrate Judge. The court has reviewed the Motions, Mr. Allmon's Response (filed December 1, 2008) (doc. # 44), Defendants' Reply (filed December 16, 2008) (doc. # 48), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

---

[1]   The Motion to Dismiss was filed on behalf of all Defendants. (*See* "Defendants' Errata to Motion to Dismiss . . . " (doc. # 49).

[2]   Defendant Veach has not been served.

I.      Statement of the Case

        Mr. Allmon is currently incarcerated at the United States Penitentiary in Florence,

Colorado ("ADX").  Mr. Allmon "and several co-defendants were indicted for drug trafficking

and attempting to kill witnesses."   *United States v. Allmon*, 500 F.3d 800, 803 (8th Cir.

2007).  A jury found Mr. Allmon guilty of multiple felony charges, including drug trafficking,

conspiracy to kill a witness and attempting to kill a witness.  *See United States v. Allmon*,

Case No. 4:04CR00169-01-WRW, Judgment in a Criminal Case (Exhibit A to Motion to

Dismiss (doc. # 20-2)).  Mr. Allmon was sentenced to multiple terms of life imprisonment,

to run concurrently.  *See id.*  The sentencing court recommended that Mr. Allmon "be

placed at the highest security federal correctional facility."  (*See* doc. # 20-2 at p. 4 of 8).

The court ordered that Mr. Allmon be prohibited from communicating in writing with

twenty-eight individuals.  (*See* Exhibit B (doc. # 20-3), as modified by Exhibit C to Motion

to Dismiss (doc. # 20-4)).   The court further ordered that "all communications, either

incoming or outgoing, that is not legal correspondence to counsel of record, should be

copied by the Bureau of Prisons and sent to the United States Attorney for the Eastern

District of Arkansas." (*See* doc. # 20-3).

        Mr. Allmon alleges three claims for relief pursuant to *Bivens v. Six Unknown Named

Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971): (1) violation of his First

Amendment rights based on the alleged denial of access to the courts and interference with

his legal mail; (2) violation of his Fifth Amendment procedural due process rights based on

his transfer from the United States Penitentiary in Terre Haute, Indiana ("USP Terre

Haute") to a "high intensity unit" at ADX; and (3) violation of his Eighth Amendment rights

based on the conditions of confinement at ADX.  Mr. Allmon sues Defendant BOP "in its

official capacity only." (*See* doc. # 3 at p. 17 of 18).  Mr. Allmon sues Defendant  Nalley,

the BOP's North Central Regional Director in Kansas City, Kansas, Defendant Veach,

Warden of USP Terre Haute, Indiana, and Defendant Brechbill, a lieutenant at USP Terre

Haute, Indiana, and Defendants Wiley, Church and Braren, who are employed ADX, in both their official and individual capacities.  (*See id.* at pp. 2-3, 17 of 18).[3]  Mr. Allmon seeks damages in the amount of $400,000 against each Defendant and injunctive relief from the BOP, including an immediate "transfer . . . to the proper facility nearest to his home of Dallas, Texas" and an expungement of "derogatory" and "unsubstantiated" information from his BOP files.  (*See id.* pp. 17-18 of 18).

Defendants move for dismissal of Mr. Allmon's Complaint on several grounds pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and (b)(6).

II.     Standard of Review

Under Rule 12(b)(1), a motion to dismiss may be granted if the court does not have subject matter jurisdiction over the matter.  In addressing a jurisdictional challenge, the court need not presume all of the allegations contained in the complaint to be true, "but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. . . ."  *United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001) (citation omitted).

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed. R. Civ. P. 12(b)(2), and the question of jurisdiction is resolved based only on the pleadings, the allegations in the complaint, the motion papers, and any supporting legal memoranda, without an evidentiary hearing, the burden is on the plaintiff to make a prima facie showing of a sufficient basis for jurisdiction. *Mylan*

---

[3]     Mr. Allmon cannot obtain money damages from any Defendant in their official capacity under *Bivens* because there is no waiver of sovereign immunity for such claims. *F.D.I.C. v. Meyer*, 510 U.S. 471, 483-86 (1994); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002). Mr. Allmon is not entitled to injunctive or declaratory relief against the individual Defendants because such relief is not available in a *Bivens* action seeking damages for past constitutional violations. *See Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991).

*Labs., Inc. v. Akzon, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).  Under this standard, it is the plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution.  *United Elec. Radio and Mach. Workers of America (UE) v. 163 Pleasant Street Corporation*, 987 F.2d 39, 43-44 (1st Cir. 1993) (internal quotation marks and citation omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).[4]  The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 127 S.Ct. at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. Rule 12(d)).  Nevertheless, "when a party submits material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion."  *Wheeler v. Hurdman,* 825 F.2d 257, 260 (10th Cir.1987) (citation omitted).  Defendants' Motion to Dismiss references materials outside of the pleadings.  (*See* Exhibits A, B, and C (docs. # 20-2, # 20-3, and 20-4).  Likewise, Mr. Allmon's Response references numerous documents outside the pleadings.  (*See* doc. # 44 at pp. 31-60 of 60).  Because both parties reference materials outside the pleadings, they are on notice that the court may treat Defendants' Motion to

---

[4]   Mr. Allmon provides no legal basis for his argument that *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. At 1955, "is limited to the antitrust context."  (*See* doc. # 44 at p. 4 of 60).

Dismiss as one for summary judgment without giving formal notice of the conversion. *See Wheeler,* 825 F.2d at 260; *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713-14 (10th Cir. 2005) (where party had opportunity to introduce evidence not contained in complaint, party is not prejudiced by the conversion and court should proceed, relying upon summary judgment standards) (citation omitted). Thus, the court considers the matters outside the pleadings to the extent that the documents attached are relevant to the specific claims. *Klover v. Antero Healthplans*, 64 F.Supp. 2d 1003, 1007 (D. Colo. 1999). To the extent that any claims may be disposed of as a matter of law and are not affected by the attached documentation, the court will analyze those claims under Rule 12(b)(6) standards.

Because Mr. Allmon appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.    Analysis

A.      Personal Jurisdiction

Mr. Allmon alleges claims against Defendant Nalley, the BOP's North Central Regional Director in Kansas City, Kansas, Defendant Veach, Warden of USP Terre Haute, Indiana, and Defendant Brechbill, a lieutenant at USP Terre Haute.  These Defendants argue that they are not subject to personal jurisdiction in the District of Colorado.

"Jurisdiction to resolve cases on the merits requires . . . authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (internal quotation marks and citation omitted). "In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."  *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir.2006) (internal quotation marks and citation omitted).  Because *Bivens*, 403 U.S. 388, does not confer nationwide service of process or jurisdiction upon federal district courts to adjudicate claims, Fed. R. Civ. P. 4(k)(1)(A) refers to the Colorado long-arm statute.  "Colorado's long arm statute is coextensive with constitutional limitations imposed by the due process clause.  Therefore, if jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident defendant."  *Benton v. Cameco Corp.*, 375 F. 3d 1070, 1075 (10th Cir. 2004) (citation omitted).  *See also United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002) (question of whether court can exercise personal jurisdiction "collapses into a single due process analysis under the Constitution." (internal quotation marks and citation omitted).

The Tenth Circuit has "carefully and succinctly la[id] out the well-established constitutional analysis for personal jurisdiction."  *Benton*, 375 F. 3d at 1075.

> The Due Process Clause protects an individual's liberty interest in not being
> subject to the binding judgments of a forum with which he has established no

meaningful contacts ties, or relations.   Therefore, a court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state. . . .

The minimum contacts standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.   Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state.

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090-91 (10th Cir.1998) (internal quotation marks and citations omitted).   "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities *within the forum State*, thus invoking the benefits and protections of its laws." *Trujillo*, 465 F.3d at 1219 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citation omitted) (emphasis in original).

Defendants Nalley, Veach, and Brechbill argue that they do not have minimum contacts with the District of Colorado.  "In determining whether a defendant has established minimum contacts with the forum state, we examine whether the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Benton*, 375 F. 3d at 1075 (internal quotation marks and citation omitted).  "A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state." *Benton*, 375 F. 3d at 1075 (internal quotation marks and citation omitted).  The court "must consider whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567 (1986).

"Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other

written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings,* 149 F.3d at 1091.

Mr. Allmon does not allege in the Complaint that Defendants Nalley, Veach, or Brechbill conducted any activities in Colorado.  Mr. Allmon does not allege in the Complaint that Defendants Nalley, Veach, or Brechbill had any contact with him in Colorado.  The events constituting their alleged unconstitutional conduct occurred in Indiana.  (See doc. # 3 at pp. 6-15).  Mr. Allmon argues in his Response that these Defendants "initiated . . . requests, memoranda, e-mail and phone calls in collusion with staff in Colorado." (*See* doc. # 44 at p. 25 of 60).  Mr. Allmon argues that "[t]his court has jurisdiction over Defendants Nalley, Veach and Brechbill for the alleged violations in their capacity as representatives of the BOP, . . ." (*See* doc. # 44 at p. 27 of 60).

The District Court for the District of Colorado and the Tenth Circuit Court of Appeals have rejected similar arguments as grounds for personal jurisdiction.  *See, e.g., Mitchell v. Ashcroft*, 158 Fed. Appx. 117, 2005 WL 3346554, at *1 (10th Cir. 2005) (affirming dismissal of suit against the BOP director for lack of personal jurisdiction); *Hill v. Pugh*, 75 Fed. Appx. 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state"); *Johnson v. Rardin*, 952 F.2d 1401 (10th Cir. 1992) (Table) (signing reviews of plaintiff's appeals and advising senior staff members and legal staff of the BOP's prisons in Colorado did not constitute sufficient contacts to permit the exercise of personal jurisdiction); *Georgacarakos v. Wiley*, 2008 WL 4216265, *4-5 (D. Colo. Sept. 12, 2008) (dismissing claims against Michael Nalley and Harrell Watts for lack of personal jurisdiction); *Hale v. Ashcroft*, No. 06-cv-541-REB-KLM, 2007 WL 2350150, at *3 (D. Colo. Aug. 15, 2007) (holding that this

Court lacks personal jurisdiction over Defendant Nalley and the BOP director).[5]  *See also Nwanze v. Philip Morris, Inc.*, 100 F. Supp. 2d 215, 220 (S.D.N.Y. 2000) ("Mere supervision over the Bureau of Prisons, the reach of which extends into every state, is insufficient to establish a basis for the exercise of personal jurisdiction.").

Mr. Allmon's allegations and arguments do not suffice to make a prima facie showing of the requisite minimum contacts.  Thus, the court need not "consider whether the exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case."  *OMI Holdings,* 149 F.3d at 1091 (internal quotation marks and citation omitted).  Given the lack of minimum contacts with Colorado, this court lacks personal jurisdiction over Defendants Nalley, Veach and Brechbill.  As the court cannot proceed to the merits of a claim in the absence of personal jurisdiction, Mr. Allmon's claims against Defendants Nalley, Veach and Brechbill are properly dismissed pursuant to Fed. R. Civ. P. 12(b)(2).[6]

---

[5]  Copies of unpublished cases cited are attached to this Recommendation.

[6]  Defendant Veach may also properly be dismissed for lack of service of process. As Mr. Allmon is proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915, the court ordered service of the Complaint on Defendants by the United States Marshal.  (*See* doc. # 7).  Pursuant to the court's July 18, 2008 "Order Granting Service by United States Marshal," the Clerk of the Court sought a waiver of service from Defendant Veach.  On July 30, 2008, the court was notified that Defendant Veach was no longer employed at the BOP.  (*See* doc. # 11).  Based on the information before the court, Defendant Veach cannot be served at the address provided by Mr. Allmon.

While an incarcerated *pro se* plaintiff proceeding *in forma pauperis* is entitled to rely on the Clerk of the Court and/or U.S. Marshal for service of the summons and complaint, there is no indication in this case that the U.S. Marshal or the Clerk of the Court have failed to perform their duties to serve Defendant Veach.  Service was attempted at the address provided by Mr. Allmon.  The court need not require the U.S. Marshal or the Clerk of the Court to locate Defendant Veach.

Fed. R. Civ. P. 4(m) provides that the court shall dismiss an action without prejudice as to any defendant who has not been served within 120 days of the filing of the action:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the

Mr. Allmon's argument that pendent personal jurisdiction exists (*see* doc. # 44 at p. 28 of 60) is inapposite, as the court lacks personal jurisdiction over Defendants Nalley, Veach, and Brechbill as to any of Mr. Allmon's claims.  *See Botefuhr*, 309 F.3d at 1272 ("once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction.").

B.     Claim One: First Amendment Violation

Mr. Allmon alleges that Defendant Braren "wrote an unwarranted disciplinary infraction against" him and seized a "missive" to "a legal assistant . . . about possibly including Braren's name in a civil action due to her prejudice remarks and acts," thereby "denying and deterring Plaintiff access to the court."  (*See* doc. # 3 at pp. 6-7 of 18).  Mr. Allmon also alleges that he "was unjustly reassigned from a general population unit to a very high intensity unit with more restrictions. . . ," demonstrating "discrimination, retaliation, and interference of Plaintiff to exercise his right to the courts. . . in violation of the First Amendment. . . ."  Mr. Allmon further alleges that "BOP staff has constantly opened, read and copied Plaintiff's incoming and outgoing legal mail outside of his presence," in violation

---

failure, the court shall extend the time for service for an appropriate period.

Approximately 12 months have passed since the filing of this civil action and the record before the court indicates that Defendant Veach has not been served with a summons and complaint in this action and that Mr. Allmon has not requested an extension of time for service.  To date, Defendant Veach has not filed with the Clerk of the Court a signed waiver of service or otherwise appeared in this civil action.  Based upon Mr. Allmon's failure to provide proof of service of the summons and complaint on Defendant Veach within 120 days after the filing of the complaint, the court recommends that Defendant Veach be dismissed from this civil action pursuant to Rule 4(m) for failure to effect service and pursuant to D.C. COLO. LR 41.1 for failure to prosecute.

of his "right to free speech."  (*See* doc. # 3 at p. 10 of 18).[7]

1.      To the extent that his First Amendment claim rests on the alleged denial of access to the courts, Mr. Allmon "must show that non-delivery of his legal mail resulted in 'actual injury' by 'frustrat[ing],' 'imped[ing],' or 'hinder[ing] his efforts to pursue a legal claim.' " *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005) (citation omitted).  *See also Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) ("Davis' allegations of two instances of mail interference are insufficient to state a claim for denial of access to the courts because Davis has not alleged that the interference with his mail either constituted an ongoing practice of unjustified censorship or caused him to miss court deadlines or in any way prejudiced his legal actions.").  "Conclusory allegations of injury in this respect will not suffice."  *Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006).  Mr. Allmon alleges only a single specific fact in support of his claim for denial of access to courts: that on November 15, 2007, Defendant Braren purportedly seized a letter in which Plaintiff "attempted to confer with a legal assistant via mail about possibly including Braren's name in a civil action." (*See* doc. # 3 at p. 7 of 18).  Mr. Allmon does not contend that the alleged "legal assistant" with whom he attempted to communicate was affiliated with his "counsel of record."  Mr. Allmon later acknowledges that "said missive" was not "marked as legal mail." (*See* doc. # 44 at p. 22 of 60).  Mr. Allmon has not alleged that any Defendant actually compromised his ability to pursue or defend a legal claim.  In fact, he filed this lawsuit subsequent to the alleged seizure of his letter.  Mr. Allmon's access to the courts claim fails because he does not allege that he suffered an actual injury in the pursuit of any legal claim.

---

[7]    To the extent that Mr. Allmon alleges that Defendants Brechbill and Veach retaliated against him (*see* doc. # 3 at p. 6 of 18), such claim fails for lack of personal jurisdiction.

2.      Mr. Allmon's First Amendment claim also rests on his allegation that he "was unjustly reassigned from a general population unit . . . ." A prisoner retains all First Amendment rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974).   Nevertheless, merely because prisoners "retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations . . . ." *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979).   Prisoners' First Amendment rights "may be curtailed whenever the institution's officials in the exercise of their informed discretion, reasonably conclude that such [rights] . . . possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132 (1977).   *See also Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989) (relevant inquiry is whether the actions of prison officials were "reasonably related to legitimate penological interests") (internal quotation marks and citation omitted).

In order to state a valid claim of retaliation under *Bivens*, a plaintiff must "allege specific facts showing retaliation [on account] of the exercise of the prisoner's constitutional rights," *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990), and "prove that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990) (internal quotation marks omitted).   "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier*, 922 F.2d at 562 n. 1.   *See also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("Mere conclusionary [sic] allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim") (citation omitted).   "The inmate must allege more than his personal belief that he is the victim of retaliation." *Jones*, 188 F.3d at 325.   Mr. Allmon must "allege a chronology of events from which retaliation

may plausibly be inferred." *Jones*, 188 F.3d at 325 (citation omitted). *See also Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) ("ultimate question is whether events would have transpired differently absent the retaliatory motive") (citation omitted).

Mr. Allmon has not alleged adequate facts to state a cognizable *Bivens* claim for unconstitutional retaliation. The only allegation Mr. Allmon offers to support claim three is the timing of his transfer to ADX. He alleges that he "lodged verbal and written complaints" in November 2007 and that he was transferred on November 28, 2007. (*See* doc. # 3 at pp. 7-8 of 18). However, to establish a plausible claim for retaliation regarding his transfer to ADX, Mr. Allmon must do more than simply state that he made complaints and was subsequently transferred.

The following information is contained in the documents attached to Mr. Allmon's Response:

1.      On April 19, 2007, the BOP placed Mr. Allmon in the special housing unit ("SHU") at USP Terre Haute after the BOP received information that relatives of the wife of a witness who testified against Mr. Allmon in his criminal trial received written communications from Mr. Allmon that were perceived as threatening. (*See* doc. # 44 at pp. 31-32 of 60). Mr. Allmon was prohibited by a June 19, 2006 order of the criminal trial court from sending any communications "either directly or indirectly" to the witness who testified against him in the criminal trial. (*See* doc. # 20-3).

2.      Mr. Allmon's written communications included a copy of a newspaper article referencing the website http://whosarat.com. (*See* doc. # 44 at p. 31 of 60).

3.      An Incident Report dated August 6, 2007, prepared by Defendant Brechbill, described Mr. Allmon's written communications to relatives of the wife of the witness in Mr. Allmon's criminal trial: "[t]he female civilian presented these writings by ALLMON were sent to places where both her and her husband's relatives live, thus defeating [BOP] mail-screening efforts." (*See* doc. # 44 at p. 37 of 60). The wife of the witness "perceived these communications as physically/life threatening." (*See id.*).

4.      The Incident Report concluded that "[t]hese overt acts by ALLMON, of establishing communication with these specific civilians, is a direct violation of a Federal Court Order by Judge William R. Wilson Jr. Eastern District of Arkansas, Western Division, on June 19, 2006, wherein the civilians' names are included in a list of twenty-nine individuals (witnesses against ALLMON at his trial) whom ALLMON was court ordered not to contact, 'either directly or indirectly.'" (*See* doc. # 44 at p. 37 of 60).

5.      Mr. Allmon wrote "Expunged" on the Incident Report. (*See* doc. # 44 at p. 37 of 60).  Other than Mr. Allmon's handwritten comment, nothing in the Incident Report itself or the other documents attached to Mr. Allmon's Response indicates the Incident Report was in fact "expunged" from Mr. Allmon's BOP records.

6.      Mr. Allmon attempted to send a profanity-laced letter to a person named "Miles Davis," in which Mr. Allmon directs the recipient to add BOP employees, including Defendant Braren, to "a civil action complaint, and place liens against their assets." (*See* doc. # 44 at pp. 45, 48 of 60).

7.      On November 28, 2007, an ADX Unit Disciplinary Committee recommended that Mr. Allmon lose telephone and visiting privileges for 30 days for sending the letter directing Miles Davis, who was not Mr. Allmon's attorney of record, to file a civil action to place liens against the assets of BOP employees, including Defendant Braren. (*See* doc. # 44 at p. 48 of 60). One violation of the disciplinary code was expunged as "repetitive" of a second referenced section from the code.  (*See id.*).  Nothing in the Incident Report itself or the other documents attached to Mr. Allmon's Response indicates the remaining portion of the Incident Report was expunged from Mr. Allmon's BOP records.

8.      On November 9, 2007, a BOP staff member responded to a request from Mr. Allmon, stating: "You received a Greater Security transfer to the ADX due to your continued refusal to comply with a court order restricting your correspondence. Your transfer was approved by the North Central Regional Office."  (*See* doc. # 44 at p. 49 of 60).

9.      On December 31, 2007, Mr. Allmon initiated the BOP administrative remedy procedure, challenging his placement in ADX.  (*See* doc. # 44 at p. 54 of 60).  Mr. Allmon set forth no basis for his challenge other than his assertion that "[p]lacement of inmate Allmon at this institution is nothing other than blatant abuse of authority, discrimination and retaliation by BOP staff at the behest of AUSA Jane Duke to avenge a personal vendetta, conceal prosecutorial misconduct and appease jailhouse 'snitches.'" (*See id.*).

10.     On January 24, 2007, Defendant Wiley responded to Mr. Allmon's Request for Administrative Remedy. (*See* doc. #  44 at p. 55 of 60). Defendant Wiley informed Mr. Allmon "that considering the severity of your current offense, your court imposed restrictions, and potential safety and security concerns, it was determined you required more control than could be provided at any other institution. Accordingly, you received a Greater Security transfer to the ADX on October 3, 2007. In order to comply with and sufficiently monitor your court imposed restrictions, you are currently housed in the Special Security [H] Unit." (*See id.*).

11.     On February 29, 2008, Defendant Nalley responded to Mr. Allmon's Regional Administrative Remedy Appeal dated February 5, 2008. (*See* doc. # 44 at p. 57 of 60). Defendant Nalley informed Mr. Allmon that the BOP "is complying with the Court's recommendation to house you in the most secure facility . . . You have provided insufficient evidence to substantiate your allegations that staff have fabricated information about you or that staff have

acted contrary to agency policy." (*See id.*).

Mr. Allmon's documentation shows that his "Greater Security Transfer" to ADX was in response to his written communications which the recipient perceived as life threatening, and which was in conformity with the criminal trial court's recommendation that Mr. Allmon "be placed at the highest security federal correctional facility." (*See* doc. # 20-2 at p. 4 of 8). Mr. Allmon has no constitutional right to engage in activity that violates a court order. As Mr. Allmon has failed to adequately allege that his "verbal and written complaints" were the "but for" cause of his transfer, he fails to state a claim for retaliation based on the exercise of a constitutional right. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) ("An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.") (internal quotation marks and citation omitted).

3.     To the extent that his First Amendment claim rests on the conclusory allegation that "since Oct. 2007 till present BOP staff has constantly opened, read and copied Plaintiff's incoming and outgoing legal mail outside of his presence" (*see* doc. # 3 at p. 10 of 18), Mr. Allmon has not alleged a single instance of mail from his "counsel of record" being opened outside his presence, nor does he allege any actual injury associated with the opening, reviewing and copying of any genuine "legal" mail, as defined in the June 19, 2006 Order. (*See* doc. # 3 at p. 10 of 18).

The "motive" for opening Mr. Allmon's mail is the June 19, 2006 Order in Mr. Allmon's underlying criminal case. (*See* doc. # 20-3). The June 19, 2006 Order specifically confines the definition of "legal" mail to "legal correspondence to counsel of record." (*See* doc. # 20-3 at p. 3 of 3). Any other correspondence shall be opened, copied and forwarded to the United States Attorney for the Eastern District of Arkansas. (*Id.*) Further, nothing in the June 19, 2006 Order suggests that copying and review of non-legal mail, as defined by

the Order, must be done in Mr. Allmon's presence.

To establish a constitutional claim based on interference with an inmate's legal mail, "the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.' " *Davis v. Goord*, 320 F.3d at 351.  *See also Smith v. Maschner*, 899 F.2d at 943-44 (absent "evidence of improper motive or resulting interference with [the inmate's ] right . . . of access to the courts," an isolated instance of opening and inspecting legal mail does not give rise to a constitutional violation).  Mr. Allmon does not contend that the alleged "legal assistant" with whom he attempted to communicate was affiliated with his "counsel of record" or that any of the "legal mail" purportedly opened outside his presence was directed to or coming from his "counsel of record." (*See* doc. # 20-3 at p. 3 of 3).  *See, e.g., Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996) (noting that mail from the courts, as contrasted to mail from a prisoner's lawyer, is not protected legal mail), *amended on other grounds*, 135 F.3d 1318 (9th Cir. 1998).  Mr. Allmon's allegations do not state a claim for violation of his First Amendment rights based on interference with legal mail.[8]

C.     Claim Two: Fifth Amendment Violation

Mr. Allmon alleges that Defendants Veach and Nalley violated his right to due process by authorizing his transfer from USP Terre Haute to ADX on September 19, 2007.

---

[8]     In his Response, Mr. Allmon also argues a violation of his "right to use the mail to contact news media" to publicly disclose the names of government witnesses in letters addressed to Sixty Minutes.  (*See* doc. # 44 at p. 23 of 60).  First, this allegation is raised only in Mr. Allmon's Response and not contained in Mr. Allmon's pleadings.  Further, the court previously rejected Mr. Allmon's attempt to reveal the names of these witnesses, by ordering that a letter from Mr. Allmon  directed to United States District Judge Zita L. Weinshienk be sealed.  (*See* docs. # 34, # 35, # 36, and # 39).  Mr. Allmon does not mention any rejected communications with the media other than the correspondence to Sixty Minutes.  (*See* doc. # 44 at p. 23 of 60).  For these reasons, the court declines to consider any First Amendment claim based on media access.

(*See* doc. # 3 at p. 12 of 18).[9]  Mr. Allmon also alleges that Defendants Wiley and Church violated his right to due process by assigning him to a "high intensity unit." (*See* doc. # 3 at p. 13 of 18).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). *See also Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all."); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (Tenth Circuit has explicitly held that "the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.") (internal quotation marks and citation omitted); *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996) ("In *Sandin*, the Court held that the plaintiff's discipline in segregated confinement was not the sort of atypical, significant deprivation that would give rise to a liberty interest entitled to due process protection.") (citation omitted); *Frazier v. Dubois*, 922 F.2d at 561-62 ("a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer. . . ."). "[T]he Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary

---

[9]   To the extent that Mr. Allmon alleges that Defendants Veach and Nalley violated his right to due process, such claim fails for lack of personal jurisdiction.

incidents of prison life.' " *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

The Tenth Circuit has applied several factors in analyzing whether conditions impose such an atypical and significant hardship that a liberty interest exists. These factors include whether: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . . ; and (4) the placement is indeterminate . . . ." *Estate of DiMarco v. Wyo. Dept. of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007). Here, at least three of the relevant factors weigh against an enforceable liberty interest in Mr. Allmon's placement and its associated restrictions.

The requirements of due process must be evaluated in the context of Mr. Allmon's demonstrated propensity for violence sufficient for the trial court to specifically direct the BOP to place the inmate "at the highest security federal correctional facility." (*See* doc. # 20-2 at p. 4 of 8). *See Jordan v. Federal Bureau of Prisons*, 191 Fed. Appx. 639, 656-57 (10th Cir. 2006) (no due process violation where inmate placed in administrative segregation without a hearing pending an investigation of the murder of another inmate), *cert. denied*, 550 U.S. 970 (2007); *Skinner v. Cunningham*, 430 F.3d 483, 486 (1st Cir. 2005) (state prisoner's immediate transfer to restricted area of prison without first conducting a pre-deprivation hearing after he killed another inmate did not violate due process). In addition to the requirements set forth by the trial court, the BOP has discretion to designate Mr. Allmon for placement at any available facility. See 18 U.S.C. 3621(b) (2007) ("The Bureau may designate any available penal or correctional facility . . . "). "[A]ny assessment must be mindful of the primary management role of prison officials who should

be free from second-guessing or micro-management from the federal courts." *Estate of DiMarco*, 473 F.3d at 1342.

While Mr. Allmon argues that his placement is "indefinite," he has not alleged that his placement increases the length of his sentence.   Further, Mr. Allmon's general allegations of restricted "liberty, law library accessibility, commissary, recreation, visitation and telephone privileges" fail to rise to a condition that is sufficiently atypical or significant in relation to the ordinary incidents of prison life to implicate a liberty interest.  *See, e.g., Lekas v. Briley*, 405 F.3d 602, 610-13 (7th Cir. 2005) (conditions of cell size, religious access/freedom, visiting procedures and telephone, opportunity for exercise and out-of-cell activity, commissary restrictions, access to both general and legal libraries,  access to radio and television, access to legal property, meal procedures, and showers and other hygiene needs did not impose an atypical and significant hardship);  *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1995) (an inmate's confinement in disciplinary segregation where he experienced frequent lockdowns, restricted access to the law library, denial of educational opportunities, and loss of social and rehabilitative activities did not impose an atypical or significant hardship).  In sum, Mr. Allmon's allegations do not support a claim for violation of due process based on his assignment to a "high intensity unit."

D.     Claim Three: Eighth Amendment Violation

Mr. Allmon alleges that Defendant Brechbill violated his Eighth Amendment rights when on April 19, 2007, he placed him in administrative segregation at Terre Haute on for five months. (*See* doc. # 3 at p. 14 of 18).[10]  Mr. Allmon further alleges cruel and unusual punishment based on "extreme restrictions on liberty, law library, accessibility, commissary, recreation, visitation and telephone privileges" at ADX.   (*See id.*).   Mr. Allmon seeks

---

[10]    To the extent that Mr. Allmon alleges that Defendant Brechbill violated his Eight Amendment right to be free from cruel and unusual punishment, such claim fails for lack of personal jurisdiction.

transfer "back to a normal USP." (*See* doc. # 3 at p. 15 of 18).

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII.  Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  As for the objective component, "extreme deprivations" are required to make out a conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).  Thus, in a conditions-of-confinement case, a "sufficiently serious" deprivation is shown when "a prison official's act or omission . . . result[s] in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297).  The "deliberate indifference" subjective standard applies to claims of inhumane conditions of confinement. *Wilson*, 501 U.S. at 303-04.  A finding of deliberate indifference requires a showing that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  Under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

As to the objective component, Mr. Allmon's allegations do not state a claim for

deprivation "of the minimal measure of life's necessities," as required to state a claim upon which relief can be granted pursuant to the Eighth Amendment.  *See Helling v. McKinney*, 509 U.S. 25, 36 (1993) (allegations were not sufficient to show exposure "to a risk that is so grave that it violates contemporary standards of decency"); *Estate of DiMarco*, 473 F.3d at 1337-38 (conditions of confinement in most restrictive housing pod "met the basic necessities of life");   *Trujillo*, 465 F.3d at 1225 n. 17 (allegations of limited access to education, employment, religious programming, housing assignment, recreation time and equipment, the telephone, and the commissary did not state an Eighth Amendment claim) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998));  *Hill v. Pugh*, 75 Fed. Appx. at 721 (ADX conditions "[show] neither an unquestioned and serious deprivation of basic human needs, nor intolerable or shocking conditions.");  *Smith v. Romer*, 107 F.3d 21, 1997 WL 57093, at *2 (10th Cir. 1997) (unpublished) (allegations of twenty-three hours per day of confinement, meals in cells, limited vocational, educational and recreational services offered through television, and light always on failed to state an Eighth Amendment claim).  The general conditions which Mr. Allmon alleges do not rise to the serious level implicating a violation of his Eighth Amendment rights.

As to the subjective component, Mr. Allmon has not alleged that the Defendants acted with "deliberate indifference."  Mr. Allmon has not alleged that Defendants personally kept him in those conditions or did so with deliberate indifference to a risk of harm.  *See Farmer*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").  The record before the court demonstrates that Mr. Allmon was placed at ADX due to his particular security circumstances and the trial court's direction that he be placed in the "highest security correctional facility," not due to the "subjective recklessness" of prison officials.  *Farmer*, 511 U.S. at 839-40.

Further, Mr. Allmon's allegations are too vague and conclusory to state a claim upon

which relief can be granted.   Other than a general conclusory allegation of "extreme restrictions on liberty, law library, accessibility, commissary, recreation, visitation and telephone privileges" (*see* doc. # 3 at p. 14 of 18), Mr. Allmon has not sufficiently alleged specific dates, circumstances, or conduct by the named Defendants.  In sum, Mr. Allmon's allegations are not adequate to state an Eighth Amendment violation.

E.      Qualified Immunity

To the extent that Mr. Allmon is suing Defendants in their individual capacities, Defendants raise the defense of qualified immunity to all of Mr. Allmon's claims.  Whether Defendants are entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> When [a defendant] asserts a defense of qualified immunity, the plaintiff bears a heavy two-part burden. Initially, the plaintiff must show the [defendant]'s conduct violated a constitutional right: A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant]'s conduct violated a constitutional right?

*Wilder v. Turner*, 490 F.3d at 813 (internal quotation marks and citations omitted).  *See also Wilson v. Layne*, 526 U.S. 603, 609 (1999) (a court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.") (citation omitted);  *Maestas v. Lujan*, 351 F.3d 1001, 1006-07 (10th Cir. 2003) (if no constitutional right was violated, it is unnecessary to proceed to the next inquiry–whether the law recognizing the constitutional right was "clearly established.");  *Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 745 (10th Cir. 1999) (court "must first determine 'whether the plaintiff has sufficiently alleged that the defendant violated a statutory or constitutional right' . . . If the plaintiff has asserted such a deprivation, *only then* do we inquire 'whether the right was clearly established such

22

that a reasonable person in the defendant's position would have known that his or her conduct violated that right' ") (citation omitted).

Having concluded above that Mr. Allmon has failed to state a claim that Defendants' conduct violated any constitutional right, "the inquiry ends and the [Defendants are] entitled to qualified immunity" on Mr. Allmon's claims. *Wilder v. Turner*, 490 F.3d at 813 (citation omitted).


F.      Mr. Allmon's Motion for Injunction

On May 28, 2009, Mr. Allmon requested "an injunction against the BOP and Ron Wiley . . . due to Warden Wiley's constant violation of my rights . . . ." (*See* doc. # 62 at p. 1 of 4).  Mr. Allmon submitted an affidavit stating that Warden Wiley dislikes him and that on May 21, 2009, Warden Wiley threatened retaliation against him.  (*See* doc. # 62 at pp. 3-4 of 4).

The standard for issuance of an injunction is well established:

To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007); *accord, Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d. 1280, 1283 (10th Cir. 1996). Mandatory injunctions and injunctions, as here, that would disturb, rather than preserve, the status quo are "specifically disfavored"; a party seeking such an injunction bears a "heightened burden" to show that "the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).  "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

First, as the court is recommending, *infra*, that Mr. Allmon's Complaint be dismissed for lack of personal jurisdiction, lack of service of process, and failure to state a claim for which relief can be granted, the court finds that Mr. Allmon has not demonstrated a sufficient likelihood of success on the merits.  Because Mr. Allmon has failed to state a viable claim, he is not entitled to injunctive relief.  Further, verbal harassment, threats, or taunts do not rise to the level of a constitutional violation.  *See Wagner v. Wheeler*, 13 F.3d 86, 92-93 (4th Cir.1993) (verbal abuse alone does not constitute a deprivation of constitutional rights);  *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993) (noting that verbal abuse is insufficient to serve as the legal basis of a civil rights action).

Second, Mr. Allmon has not presented  sufficiently specific facts to show that he will suffer irreparable injury if his request for preliminary injunction is denied.  "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Schrier v. University of Colorado*, 427 F.3d 1253, 1267 (10th Cir. 2005) (citation omitted).  Even "serious or substantial harm is not irreparable harm."  *Schrier*, 427 F.3d at 1267 (internal quotation marks and citation omitted).  "The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  *Schrier*, 427 F.3d at 1267 (internal quotation marks and citation omitted).  "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance."  *Schrier*, 427 F.3d at 1267.  Mr.  Allmon does not demonstrate how his current placement in ADX is altered by the alleged "verbal abuse."  Mr. Allmon fails to demonstrate that he will suffer irreparable injury without the injunctive relief he seeks.

Next, Mr. Allmon must demonstrate that "the threatened injury. . . outweighs whatever damage the proposed injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest."  *Schrier,* 427 F.3d at 1258.  Mr. Allmon has not addressed or demonstrated whether the alleged harm to him outweighs

the potential damage the injunction may cause Defendants or whether an injunction would not be adverse to the public's interest.  Mr. Allmon has failed to demonstrate these two requisite elements.  As Mr. Allmon has failed to satisfy the four prerequisites, his request for an injunction is properly denied.

Accordingly, IT IS RECOMMENDED that:

1.      Defendants' "Motion to Dismiss Prisoner Complaint" (filed September 29, 2008) (doc. # 20) be GRANTED and this civil action be dismissed against all Defendants for lack of personal jurisdiction, lack of service of process, and failure to state a claim for which relief can be granted.

2.      Mr. Allmon's "Request [Motion] for Injunction Against Bureau of Prisons and Warden Ron Wiley" (filed May 28, 2009) (doc. # 62) be DENIED.

DATED at Denver, Colorado, this 8th day of June, 2009.

BY THE COURT:


___s/Craig B. Shaffer_____
United States Magistrate Judge