IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita L. Weinshienk

Civil Action No. 08-cv-01183-ZLW-CBS

DEREK I. ALLMON,

       Plaintiff,

v.

BUREAU OF PRISONS,
MICHAEL K. NALLEY, Dir.,
R.V. VEACH, Warden,
R. WILEY, Warden,
MR. CHURCH, Captain,
K.O. BRECHBILL, Lieutenant,
L. BRAREN, SIS Tech,

       Defendants.

---

## ORDER

---

The matters before the Court are Defendants' Motion To Dismiss Prisoner

Complaint (Motion To Dismiss) (Doc. No. 20)[1] and Plaintiff's Request For Injunction

Against Bureau Of Prisons And Warden Ron Wiley (Motion For Injunctive Relief) (Doc.

No. 62).  The motions were referred to Magistrate Judge Craig B. Shaffer pursuant to

D.C.COLO.LCivR 72.1C, and on June 8, 2009, the Magistrate Judge issued a

Recommendation Of United States Magistrate Judge (Recommendation) (Doc. No. 64)

recommending that the Motion To Dismiss be granted and that the Motion For Injunctive

Relief be denied.  Plaintiff filed objections to the Recommendation on June 29, 2009

---

[1]The Motion To Dismiss was filed by all Defendants.

(Doc. No. 66).[2]  Defendants filed a response to the objections on July 13, 2009 (Doc.

No. 68), and Plaintiff filed a reply on August 3, 2009 (Doc. No. 70).  The Court reviews

*de novo* those portions of the Magistrate Judge's Recommendation to which Plaintiff

has specifically objected.[3]  The Court construes Plaintiff's pleadings and papers

liberally because he is proceeding *pro se*.[4]

## A.    Background

In June 2006, Plaintiff was convicted in the United States District Court, Eastern

District of Arkansas, on multiple felony charges including drug trafficking, conspiracy to

kill a witness, and attempting to kill a witness.  Plaintiff was sentenced to several

concurrent life sentences.  The sentencing court recommended that Plaintiff "be placed

at the highest security federal correctional facility."[5]  The sentencing court also issued

an order prohibiting Plaintiff from sending any direct or indirect communications to 29

people specifically named in the order, and requiring that all correspondence from

Plaintiff which is not legal correspondence to his counsel of record be copied by the

Bureau of Prisons (BOP) and sent to the United States Attorney for the Eastern District

of Arkansas.[6]

---

[2]The Certificate Of Service attached to the objection states that the objection was mailed to Plaintiff's counsel on June 24, 2009.

[3]See 28 U.S.C. § 636(b)(1); United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (court's *de novo* review is limited to "any portion of the magistrate judge's disposition to which specific written objection has been made. . . .").

[4]See Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007).

[5]Motion To Dismiss, Ex. A (Doc. No. 20-2) at 4.

[6]Motion To Dismiss, Ex. B (Doc. No. 20-3).

Plaintiff alleges that he arrived at the United States Penitentiary in Terre Haute, Indiana (USP Terre Haute) on July 12, 2006.  He alleges that he was transferred to the Administrative Maximum facility in Florence, Colorado (ADX) on September 19, 2007, and then, on November 28, 2007, was reassigned from a general population unit at ADX to a high security unit at ADX.[7]

Plaintiff pleads three claims for relief under Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics[8] for (1) violation of his First Amendment rights based upon alleged retaliation and interference with his legal mail, (2) violation of his Fifth Amendment procedural due process rights stemming from his transfer from USP Terre Haute to ADX, and (3) violation of his Eighth Amendment rights based on the conditions of his confinement at ADX.  Plaintiff sues the individual Defendants in both their official and individual capacities, and seeks both monetary damages and injunctive relief.[9]

The Recommendation states that because both parties referenced materials outside of the pleadings on the Motion to Dismiss, "they are on notice that the court may treat Defendants' Motion to Dismiss as one for summary judgment without giving formal notice of the conversion."[10]  The Recommendation states that matters outside of the pleadings will be considered to the extent that submitted documents are relevant to the claims, but to the extent that claims can be disposed of as a matter of law without

---

[7]Prisoner Complaint (Doc. No. 3) at 3, 4, 8, 12 of 18.

[8]403 U.S. 388 (1971).

[9]Prisoner Complaint (Doc. No. 3) at 17-18 of 18.

[10]Recommendation at 5 (citing Wheeler v. Hurdman, 825 F.2d 257, 260 (10th Cir. 1987); Burnham v. Humphrey Hospitality Reit Trust, Inc., 403 F.3d 709, 713-14 (10th Cir. 2005)).

reference to the submitted documents, those claims will be analyzed pursuant to Fed. R. Civ. P. 12(b)(6).[11]  Neither party has objected to this aspect of the Recommendation.

## B.    Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

The Magistrate Judge recommended the dismissal of Defendant Nalley (the BOP's North Central Regional Director in Kansas City, Kansas), Defendant Veach (Warden of the USP Terre Haute), and Defendant Brechbill (a lieutenant at the USP Terre Haute) for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  In order for this Court to exercise personal jurisdiction over these Defendants, Plaintiff must show that the Defendants purposely directed activities to the state of Colorado and that this litigation arose as a result of injuries related to those activities.[12]

In his objections to the Recommendation, Plaintiff does not dispute that Defendants Nalley, Veach, and Brechbill lack the requisite minimum contacts with Colorado to establish personal jurisdiction.[13]  Rather, Plaintiff states only that whether he can file suit in this Court for acts that allegedly occurred in Indiana "is more a question about venue than jurisdiction."[14]  However, the Court cannot adjudicate claims against a defendant over whom it lacks personal jurisdiction,[15] regardless of the propriety of venue.  Plaintiff has failed to make a prima facie showing that Defendants

---

[11]See id.

[12]See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

[13]See OMI Holdings, Inc. v. Royal Ins. Co., 149 F.3d 1086, 1090-91 (10th Cir. 1998) (setting forth the minimum contacts standard for specific personal jurisdiction).

[14]Plaintiff's Objections (Doc. No. 66) at 3.

[15]See In re Lang, 414 F.3d 1191, 1195 (10th Cir. 2005).

Nalley, Veach, and Brechbill have the minimum contacts necessary for this Court to exercise personal jurisdiction over them.  Thus, the claims against these Defendants properly are dismissed with prejudice.

**C.     Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted**

**1.     Legal Standard**

"[T]o withstand a [Fed. R. Civ. P. 12(b)(6)] motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"[16] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"[17] and legal conclusions couched as factual allegations are insufficient.[18]  Under Fed. R. Civ. P. 56(c), which applies here to the extent that the Court has considered materials outside of the pleadings, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[19]  In applying this standard the Court, "examine[s] the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion."[20]

_____

[16]Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

[17]Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

[18]See id. at 1949-50.

[19]Fed. R. Civ. P. 56(c).

[20]McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998) (quotation omitted).

**2.    Bivens Claims**

All of Plaintiff's claims in this case are brought pursuant to Bivens.[21]  However,

"[a] Bivens action may not be brought against federal agencies or agents acting in their

official capacities."[22]  Thus, all claims against the BOP (which is a federal agency), and

all claims against the individual Defendants in their official capacities, must be

dismissed.  As a result, the only cognizable claims in this case are claims against the

individual Defendants in their individual capacities.

Plaintiff's request for injunctive relief appears to be made against the BOP only.[23]

Even if it were made against the individual Defendants, the individual Defendants have

no ability to accomplish the relief sought, such as transferring Plaintiff to another facility

and expunging his prisoner file.  Thus, injunctive relief is not available to Plaintiff in this

action.

**3.    First Amendment Retaliation Claim**

Plaintiff asserts in his objections to the Recommendation that his claim for relief

under the First Amendment "rest[s] solely on retaliation and free speech," and does not

include a claim of denial of his right to access the courts.[24]

---

[21]403 U.S. 388.

[22]Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002) (citing Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 483-86 (1994)).

[23]Prisoner Complaint (Doc. No. 3) at 18 of 18.

[24]Plaintiff's Objections (Doc. No. 66) at 4.

### a. Alleged Retaliation for Letter to Legal Assistant

Plaintiff alleges, first, that Defendant Lisa Braren (an ADX employee) initiated unwarranted disciplinary actions against him in retaliation for a letter Plaintiff wrote to an alleged legal assistant named Miles Davis on November 15, 2007. In that letter, Plaintiff stated that, "it is now necessary that" Defendant Braren and three other ADX employees be added as defendants in Plaintiff's civil action, and that liens be placed "against their assets."[25] A November 28, 2007, ADX Incident Report sets forth Defendant Braren's description of Plaintiff's letter and states, under "Committee Action," that, based on the letter, "UDC recommends 30 days [illegible], loss of phone and visiting for 30 days."[26]

The Magistrate Judge considered Plaintiff's allegations concerning the letter only in the context of a First Amendment claim for denial of access to the courts.[27] In his objections, Plaintiff asserts that the claim in fact is one for First Amendment retaliation.

In order to state a claim for retaliation under the First Amendment, a prisoner plaintiff must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."[28] Defendants contend that Plaintiff's letter to the legal assistant is not constitutionally protected because "Plaintiff does not have any constitutionally-protected right to engage in conduct that constitutes a crime - including

---

[25]Prisoner Complaint (Doc. No. 3) at 6-7 of 18; see also Doc. No. 44 at 43-46.

[26]Doc. No. 44 at 48 of 60.

[27]See Recommendation at 11.

[28]Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990).

the filing of fraudulent liens,"[29] which is prohibited under Colo. Rev. Stat. § 18-5-114.[30]

This Court cannot, and does not intend to, adjudicate a hypothetical criminal charge under Colo. Rev. Stat. § 18-5-114.  However, based on the evidence submitted on this motion, it does not appear that Plaintiff's letter to the alleged legal assistant would run afoul of § 18-5-114, since the letter alone does not establish that any written instrument, containing statements which Plaintiff knew to be materially false, was ever presented to a public office or a public employee to be registered, filed, or recorded.[31]  It is plausible that Plaintiff was under the mistaken impression that he was entitled to file a lien against anyone named as a Defendant in his civil case, and thus raised the issue in his letter. There is no evidence that Plaintiff instructed that the liens include statements which he knew to be false, and, regardless, no liens were, apparently, ever presented for filing. Plaintiff's First Amendment retaliation claim against Defendant L. Braren, which is based upon alleged retaliation for Plaintiff's letter to Miles Davis, thus will not be dismissed.

---

[29]Defendants' Response To Plaintiff's Objections To Report And Recommendation (Doc. No. 68) at 68.

[30]Colo. Rev. § 18-5-114(1) provides that:

> A person commits offering a false instrument for recording in the first degree if, knowing that a written instrument relating to or affecting real or personal property or directly affecting contractual relationships contains a material false statement or material false information, and with intent to defraud, he presents or offers it to a public office or a public employee, with the knowledge or belief that it will be registered, filed, or recorded or become a part of the records of that public office or public employee.

A second degree violation does not require an "intent to defraud."  See Colo. Rev. § 18-5-114(3).

[31]Colo. Rev. Stat. § 18-5-114.

### b. Alleged Retaliation for Verbal and Written Complaints While at ADX

Plaintiff also alleges that on November 28, 2007, he was transferred from a general population unit at ADX to a high security, more restrictive unit at ADX, in retaliation for verbal and written complaints which he lodged earlier that month with Defendant Defendant R. Wiley (the ADX Warden) and Defendant Church (who Plaintiff alleges was acting as the ADX "Associate Warden") against Defendant Braren and an Assistant United States Attorney.[32]  Plaintiff alleges that when he asked Defendant Wiley why he was being reassigned, Wiley responded that he was "doing what the U.S. attorney wants.  And plus, you talk too much shit in your little pissy filings."[33]  Plaintiff alleges that Defendant Braren gave him virtually the same response.[34]

In his Recommendation, the Magistrate Judge discussed the issue of First Amendment retaliation in the context of evidence indicating that Plaintiff's transfer from USP Terre Haute to ADX in September 2007 was ordered after Plaintiff wrote what were perceived to be threatening letters in April, 2007 to relatives of the wife of one of the witnesses in his criminal trial.[35]  The Magistrate Judge's Recommendation concluded that because Plaintiff "has no constitutional right to engage in activity that violates a court order," apparently referring to the sentencing court's order restricting Plaintiff's correspondence, Plaintiff has failed to state a claim for retaliation based upon

---

[32]Prisoner Complaint (Doc. No. 3) at 7-9 of 18.

[33]Id. at 8-9 of 18.

[34]Id. at 9 of 18.

[35]See Recommendation (Doc. No. 64) at 13-14.

the exercise of a constitutional right.[36]  However, as the Court reads the Complaint, Plaintiff is claiming that it was *his reassignment from the general population at ADX to the high security unit at ADX* that constituted retaliation for his verbal and written complaints against Defendant Braren and the Assistant United States Attorney, not that his *transfer from USP Terre Haute to ADX* constituted First Amendment retaliation.[37] The Court has not located any evidence in the record indicating that Plaintiff's reassignment to a more restrictive unit within ADX in November 2007, two months after he was transferred there from USP Terre Haute, was based upon Plaintiff's April, 2007 letters written while he was at USP Terre Haute.  Further, as previously discussed, to the extent that Plaintiff is alleging that his reassignment within ADX was ordered in retaliation for his November, 2007 letter, the Court is not convinced that the letter constituted a crime or otherwise lacked First Amendment protection.  Plaintiff's claim for First Amendment retaliation based upon his reassignment within ADX in November 2007 will not be dismissed.

Plaintiff also asserts that his right to free speech under the First Amendment has been violated because, "since Oct. 2007 till present BOP staff has constantly opened, read and copied Plaintiff's incoming and outgoing legal mail outside of his presence."[38] Again, the sentencing court ordered that all correspondence from Plaintiff which is not

---

[36]Recommendation (Doc. No. 64) at 15.

[37]Prisoner Complaint (Doc. No. 3) at 7-9 of 18.  The Recommendation appears to have confused the alleged date of Plaintiff's transfer to ADX (September 19, 2007) with the alleged date of his reassignment within ADX (November 28, 2007).  See Recommendation (Doc. No. 64) at 13 at lines 4-10.

[38]Prisoner Complaint (Doc. No. 3) at 10 of 18.

legal correspondence to his counsel of record must be copied by the BOP and sent to the United States Attorney. Plaintiff has submitted no evidence that BOP staff have opened, read, or copied any correspondence from Plaintiff to his legal counsel of record. In his objections, Plaintiff appears to argue that while the sentencing court's order allows Plaintiff's correspondence to persons other than his legal counsel of record to be "copied" and "sent" to the U.S. Attorney, the order does not authorize the correspondence to be "opened" first.[39] However, the sentencing court's order certainly contemplates that mail to persons other than Plaintiff's legal counsel of record will be opened before it is copied and sent to the U.S. Attorney, since a letter cannot be copied if it is not opened first. Plaintiff's First Amendment claim based upon BOP staff's interference with his mail properly is dismissed.

### 4.    Fifth Amendment Claim

Plaintiff's Second Claim for Relief alleges that Plaintiff's Fifth Amendment due process rights were violated when he was transferred from USP Terre Haute to ADX, and also when he later was reassigned from a general population unit to a high security unit within ADX.

To state a plausible Fifth Amendment due process claim, a prisoner must allege that he or she (1) was deprived of a liberty interest (2) without constitutionally required procedural safeguards.[40]

---

[39]Plaintiff's Objections (Doc. No. 66) at 8-9.

[40]See Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972).

###### a.    Liberty Interest

A prisoner's liberty interests generally are limited to "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[41]  In <u>Estate of DiMarco v. Wyoming Dep't of Corrections</u>,[42] the United States Court of Appeals for the Tenth Circuit stated that factors relevant to determining whether a prisoner has a liberty interest in avoiding transfer to and placement in more adverse conditions of confinement might include (1) whether the placement relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) whether the conditions of placement are extreme; (3) whether the placement increases the duration of confinement; and (4) whether the placement is indeterminate.[43]  In assessing these factors, the Court "must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-managing from the federal courts."[44]

With regard to the first factor in the analysis, whether the placement relates to and furthers a legitimate penological interest, such as safety or rehabilitation, Plaintiff argues that he "has never presented the severe or chronic behavior problems that cannot be addressed in any other BOP facility which merit placement in ADX . . . ."[45] Plaintiff also contends that there is nothing to indicate that while he was incarcerated at

---

[41]<u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995).

[42]473 F.3d 1334, 1342 (10th Cir. 2007).

[43]<u>Id.</u> at 1342.

[44]<u>Id.</u> (citing <u>Sandin</u>, 515 U.S. at 482-84).

[45]Plaintiff's Objections (Doc. No. 66) at 10.

USP Terre Haute he "posed a safety risk to fellow inmates, prison personnel, the general public, or otherwise interfered with the legitimate penological objectives of the prison environment."[46] Defendants contend that Plaintiff's underlying convictions justify his placement at ADX, noting that Plaintiff is "an inmate who has demonstrated a propensity for violence sufficient to prompt the Trial Court to specifically direct the BOP to place the inmate 'at the highest security federal correctional facility.'"[47] In actuality, this was a recommendation, not a direction, from the trial court.[48] In any event, if Plaintiff's underlying convictions alone necessitated his placement at ADX, Defendants have, at this point, provided no explanation or evidence addressing why he was not placed at ADX initially.[49] Defendants also fail to explain why Plaintiff's "success in reaching beyond the walls of USP Terre Haute to send threatening communications to a witness's family members"[50] necessitated his placement at ADX. It may well be that there are systems in place at ADX that decrease the likelihood that Plaintiff could successfully send another such communication, but Defendants have not yet provided evidence to that effect. Based on the allegations and evidence presently before the Court, the first factor weighs in Plaintiff's favor.

The second factor that the Court must examine is whether the conditions of

---

[46]Id.

[47]Motion To Dismiss (Doc. No. 20) at 18.

[48]See Motion To Dismiss, Ex. A (Doc. No. 20-2) at 4.

[49]See Stine v. Lappin, 2009 WL 103659 (D. Colo. Jan. 14, 2009).

[50]Defendants' Response To Plaintiff's Objections (Doc. No. 68) at 11.

placement are extreme. Plaintiff alleges in his Complaint that he has been in "constant lockdown in isolation" at ADX, "with extreme restrictions on liberty, law library accessibility, commissary, recreation, visitation and telephone privileges."[51] In Wilkinson v. Austin,[52] the United States Supreme Court determined that indefinite placement in solitary confinement at the Ohio State Penitentiary Supermax facility, where "almost all human contact is prohibited,"[53] and which disqualified inmates from parole consideration, gave rise to a liberty interest.[54] At this point, the Court has not been provided with any specific details concerning the conditions of Plaintiff's confinement at ADX, such as the number of hours per day spent in isolation, the amount and type of exercise permitted, and the type of human contact allowed. While there apparently are no parole considerations here as was the case in Wilkinson, if Plaintiff is in constant isolation at ADX with almost no human contact, as he appears to allege, then such conditions could qualify as "extreme." This factor weighs in Plaintiff's favor.

The third factor favors Defendants, since Plaintiff's confinement at ADX does not affect the length of his sentence.

The fourth factor, whether the placement is indeterminate, favors Plaintiff, since

---

[51] Prisoner Complaint (Doc. No. 3) at 6 of 18.

[52] 545 U.S. 209 (2005).

[53] Id. at 223.

[54] See id. at 224.

Defendants do not appear to dispute that the term of Plaintiff's solitary confinement is "indefinite."[55]

Assessing all of the relevant factors, the Court concludes that dismissal of the due process claim based on insufficient allegation of a liberty interest is not warranted at this stage of the proceedings.

### b.    Procedural Safeguards

The second step of the due process analysis addresses whether Plaintiff was denied the appropriate level of process.[56]  Although the requirements of due process are flexible, the Court nonetheless should consider three distinct factors, identified in Mathews v. Eldridge:[57]

> [f]irst, [1] the private interest that will be affected by the official action; second, [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[58]

The Court takes into consideration that "[p]risoners held in lawful confinement have their liberty interests curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free

---

[55]Plaintiff's Objections (Doc. No. 66) at 11.

[56]See id.

[57]424 U.S. 319, 335 (1976).

[58]Wilkinson, 545 U.S. at 224-25 (quoting Mathews, 424 U.S. at 335).

from confinement at all."[59]

As to the first factor, the "private interest" at issue here is Plaintiff's adequately-pleaded liberty interest in avoiding placement at ADX, and/or a high security unit at ADX.[60]

The second factor, the risk of a deprivation of Plaintiff's liberty interest through the procedures used, "addresses the risk of an erroneous placement under the procedures in place, and the probable value, if any, of additional or alternative procedural safeguards."[61]  Here, Plaintiff contends that he received no notice or opportunity to be heard prior to being transferred to ADX and reassigned within ADX.[62] As noted in Wilkinson, Supreme Court due process cases have "consistently held" that "notice of the factual basis leading to" the prisoner reclassification and "a fair opportunity for rebuttal" are "among the most important procedural mechanisms for purposes of avoiding erroneous deprivations."[63]  The Wilkinson court determined that the prison policy at issue, which, among other things, provided inmates with advance

notice of the factual basis for their reclassification and an opportunity to submit

---

[59]Id. at 225.

[60]See Stine, 2009 WL 103659, *11.

[61]Wilkinson, 545 U.S. at 225.

[62]Plaintiff does allege that he was able to ask Defendants Wiley and Braren why he was being reassigned to the higher security unit at ADX.  See Prisoner Complaint (Doc. No. 3) at 7-9.  Thus, he appears to be contending that he was given no formal or otherwise adequate notice of the reassignment, and no opportunity to formally and/or adequately respond.

[63]Id. at 226.

objections prior to the final review, satisfied the second <u>Mathews</u> factor.[64]

Defendants contend that "an adequate level of process was available to Plaintiff in the BOP's Administrative Remedy program - which Plaintiff used,"[65] and that "[t]he Administrative Remedy program provided Plaintiff an opportunity to be heard in connection with those placement decisions."[66]  However, the evidence to which Defendants cite does not indicate that Plaintiff was afforded notice or an opportunity to be heard *prior to* his transfer and reassignment.[67]  Instead, the cited evidence indicates that Plaintiff was afforded, and employed, administrative procedures to challenge the transfer and reassignment only *after* the transfer and reassignment had occurred.[68]

Defendants argue that, under the circumstances of this case, "a post-deprivation review provided Plaintiff all the process that was due."[69]  However, the cases Defendants cite in support of this contention are distinguishable.[70]  In <u>Estate of DiMarco</u>, the court stated that "[n]otice is less weighty in this case because [the plaintiff] agrees

---

[64]<u>See</u> <u>Wilkinson</u>, 545 U.S. at 226.

[65]Defendants' Response To Plaintiff's Objections To Report And Recommendation (Doc. No. 68) at 10.

[66]<u>Id.</u> at 11.

[67]<u>See</u> <u>id.</u> at 10,11 (citing Doc. No. 3 at 7 (Plaintiff's Complaint; no allegation of advance notice or opportunity for hearing); Doc. No. 44 at 51-52 (ADX Informal Resolution Form dated December 14, 2007), 55 (Response to Request for Administrative Remedy dated January 24, 2008), and 57 (Response to Request for Administrative Remedy dated February 29, 2008); Doc. No. 20 at 17-19 (discussion of BOP administrative remedy program generally)).

[68]<u>See</u> <u>id.</u>

[69]Defendants' Reply In Support Of Motion To Dismiss Prisoner Complaint (Doc. No. 48) at 8.

[70]<u>See</u> Motion To Dismiss (Doc. No. 20) at 18-19.

that segregated housing was appropriate,"[71] and, further, the prison provided periodic reviews of the prisoner's status.[72] Such is not the case here. In <u>Jordan v. Federal Bureau of Prisons</u>,[73] the plaintiff was placed in segregation pending an investigation of his alleged murder of another inmate. The court applied <u>Hewitt v. Helms</u>,[74] in which the Supreme Court held that only minimal procedural safeguards, namely, an informal, nonadversary review of evidence, are required before segregating an inmate "feared to be a threat to institutional security."[75] Likewise, in <u>Skinner v. Cunningham</u>,[76] the court found no due process violation where the inmate was moved to segregation with no hearing or process whatsoever after killing another inmate. The court noted that "[t]he absence of notice and a hearing may be justified by exigent circumstances."[77] In the present case, there is no allegation or evidence before the Court that Plaintiff posed an immediate threat to prison security, or that exigent circumstances otherwise existed which required his immediate transfer and/or reassignment without any prior notice or opportunity for objection. By alleging that he was transferred and reassigned without any advance notice or opportunity for rebuttal,

---

[71] <u>DiMarco</u>, 473 F.3d at 1345 n.9.

[72] <u>Id.</u> at 1344.

[73] 2006 WL 2135513 (10th Cir. July 25, 2006).

[74] 459 U.S. 460 (1983).

[75] <u>Id.</u> at 474.

[76] 430 F.3d 483, 486 (1st Cir. 2005).

[77] <u>Id.</u> (quoting <u>Reardon v. United States</u>, 947 F.2d 1509, 1522 (1st Cir. 1991)).

Plaintiff has adequately pleaded facts indicating a high risk of an erroneous deprivation of his liberty interest through the procedures used.

Neither party has addressed the third factor, the additional burdens placed upon the government by alternate procedures, and the Court will not speculate as to such potential burdens.

Based upon the foregoing application of the relevant factors, the Court concludes that Plaintiff's pleading of inadequate procedural safeguards is sufficient under Mathews. Plaintiff's Fifth Amendment claim thus will not be dismissed at this juncture.

### 5. Eighth Amendment Claim

Plaintiff contends that his placement in administrative segregation at USP Terre Haute and his assignment to indefinite solitary confinement at ADX with "extreme restrictions on liberty, law library accessibility, commissary, recreation, visitation and telephone privileges" constitute cruel and unusual punishment in violation of the Eighth Amendment. These allegations do not, however, rise to the level of a deprivation "of the minimal measure of life's necessities"[78] required to establish an Eighth Amendment claim. Plaintiff also asserts that "[t]he federal courts have . . . held, that to transfer an inmate to a 'Supermax' facility for improper purposes constitutes cruel and unusual punishment."[79] Plaintiff cites no legal authority in support of this proposition, and the

---

[78]Farmer v. Brennan, 511 U.S. 825, 834 (1994).

[79]Plaintiff's Objections (Doc. No. 66) at 14.

Court has found none.  Accordingly, the Court adopts the Magistrate Judge's
recommendation that Plaintiff's Eighth Amendment claim be dismissed pursuant to Fed.
R. Civ. P. 12(b)(6).

**6.      Qualified Immunity**

Defendants have raised the defense of qualified immunity with respect to all of
Plaintiff's claims asserted against them in their individual capacities.  When a defendant
asserts the defense of qualified immunity, the plaintiff has the burden of demonstrating
that (1) the defendant's conduct violated the law, and (2) the relevant law was clearly
established when the violation occurred.[80]  A constitutional right is "clearly established" if
"[t]he contours of the right [are] sufficiently clear that a reasonable official would
understand that *what he is doing* violates that right."[81]  Qualified immunity leaves "ample
room for mistaken judgments" and protects "all but the plainly incompetent or those who
knowingly violate the law."[82]

Dismissal of the claims against Defendants Wiley, Church, and Braren[83] based
on qualified immunity is not appropriate at this time.  Two of Plaintiff's constitutional
claims survive the present dispositive motion, and further development of the facts in
this case is necessary to determine whether the second prong of the qualified immunity
analysis applies.

---

[80]See Clanton v. Cooper, 129 F.3d 1147, 1153 (10th Cir. 1997).

[81]Schalk v. Gallemore, 906 F.2d 491, 499 (10th Cir. 1990) (quoting Anderson v. Creighton, 483
U.S. 635, 640 (1987)) (emphasis in original).

[82]Malley v. Briggs, 475 U.S. 335, 341 (1986).

[83]Because Defendants Nalley, Veach, and Brechbill are dismissed based on lack of personal
jurisdiction, the Court does not address qualified immunity with respect to them.

**D.  Claims and Defendants Remaining in this Case**

As a result of this Order, the claims that remain in this case are: (1) Plaintiff's First Amendment retaliation claim against Defendant Braren, in her individual capacity, based upon alleged retaliation for Plaintiff's letter to Miles Davis, (2) Plaintiff's First Amendment retaliation claim against Defendants Church and Wiley, in their individual capacities, based upon Plaintiff's reassignment within ADX in November 2007, and (3) Plaintiff's Fifth Amendment due process claim against Defendants Church and Wiley, in their individual capacities, based upon Plaintiff's reassignment from a general population unit to a high security unit within ADX.  The claims are for monetary damages only and not injunctive relief.

**E.  Plaintiff's Motion For Injunctive Relief**

Plaintiff has not objected to the recommendation that Plaintiff's Motion For Injunctive Relief be denied.  The Court has reviewed this aspect of the Magistrate Judge's Recommendation and agrees with and adopts the Magistrate Judge's well-reasoned conclusion that the motion should be denied.

**F.  Order**

For the reasons set forth above, it is

ORDERED that the June 8, 2009, Recommendation Of United States Magistrate Judge (Doc. No. 64) is adopted in part.  It is

FURTHER ORDERED that Defendants' Motion To Dismiss Prisoner Complaint (Doc. No. 20) (Motion To Dismiss) is granted in part and denied in part.  It is

FURTHER ORDERED that the Motion To Dismiss is granted as to Defendants Bureau of Prisons, Michael K, Nalley, R.V. Veach, and K.O. Brechbill, and said Defendants are dismissed from this action with prejudice. It is

FURTHER ORDERED that the Motion To Dismiss is granted as to Defendants R. Wiley, Mr. Church, and L. Braren in their official capacities, and said Defendants in their official capacities are dismissed from this action with prejudice. It is

FURTHER ORDERED that the Motion To Dismiss is granted as to Plaintiff's First Claim for Relief for violation of his First Amendment rights to the extent that the First Claim for Relief is based upon an allegation of interference with Plaintiff's prison mail, and that aspect of the First Claim for Relief is dismissed with prejudice. It is

FURTHER ORDERED that the Motion To Dismiss is granted as to Plaintiff's Third Claim for Relief for violation of his Eighth Amendment rights, and said claim is dismissed with prejudice. It is

FURTHER ORDERED that the Motion To Dismiss otherwise is denied. It is

FURTHER ORDERED that Plaintiff's Request For Injunction Against Bureau Of Prisons And Warden Ron Wiley (Doc. No. 62) is denied. It is

FURTHER ORDERED that the case caption shall be amended to reflect the dismissal of the Defendants dismissed herein.

DATED at Denver, Colorado, this 26th day of May, 2010.

BY THE COURT:

_____
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court