IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01183-MSK-CBS

DEREK I. ALLMON,
        Plaintiff,
v.

R. WILEY, Warden,
MR. CHURCH, Captain, and
L. BRAREN, SIS Tech,
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) Defendants Wiley and Church's
Motion for Summary Judgment (Doc. # 92); (2) Defendant Braren's Motion for Summary
Judgment (Doc. # 93) (both filed January 18, 2011); and (3) Defendants' Motion to Strike
Exhibits A and C (filed May 26, 2011) (Doc. # 106).  Pursuant to the Order of Reference
dated July 23, 2008 (Doc. # 8) and the memoranda dated January 19, 2011 (Doc. # 94)
and June 2, 2011 (Doc. # 107), these matters were referred to the Magistrate Judge.  The
court has reviewed the Motions, Mr. Allmon's Response (filed March 1, 2011) (Doc. # 96),[1]
Defendants' Replies (filed April 4, 2011) (Docs. # 102 and # 103), the declarations and
exhibits, the entire case file, and the applicable law and is sufficiently advised in the
premises.

I.      Statement of the Case

        Mr. Allmon is currently incarcerated at the United States Penitentiary in Florence,
Colorado ("ADX").  Mr. Allmon "and several co-defendants were indicted for drug trafficking

_____

        [1]   Mr. Allmon has not filed a response to Defendants' Motion to Strike Exhibits A
and C (Doc. # 106).

and attempting to kill witnesses." *United States v. Allmon*, 500 F.3d 800, 803 (8th Cir. 2007). A jury found Mr. Allmon guilty of multiple felony charges, including drug trafficking, conspiracy to kill a witness and attempting to kill a witness. *See United States v. Allmon*, Case No. 4:04CR00169-01-WRW, Judgment in a Criminal Case (Exhibit A to Motion to Dismiss (Doc. # 20-2)). Mr. Allmon was sentenced to multiple terms of life imprisonment, to run concurrently, plus five years. (*See id.*; Doc. # 92-1 at 22-26 of 26). The sentencing court recommended that Mr. Allmon "be placed at the highest security federal correctional facility." (*See* Doc. # 20-2 at p. 4 of 8). The sentencing court ordered that Mr. Allmon be prohibited from communicating in writing with twenty nine individuals. (*See* Exhibit B (Doc. # 20-2), as modified by Exhibit C to Motion to Dismiss (Doc. # 20-3)). The court further ordered that "all communications, either incoming or outgoing, that is not legal correspondence to counsel of record, should be copied by the Bureau of Prisons and sent to the United States Attorney for the Eastern District of Arkansas." (*See* Doc. # 20-3). In 2010, the sentencing court ordered additional restrictions on Mr. Allmon, *United States v. Allmon*, 2010 WL 936560 (E.D. Ark. March 15, 2010) (in light of Mr. Allmon's continued attempts to circumvent the court's restrictions on his correspondence, "his right to send mail must be restricted even more") and declined to grant Mr. Allmon's request to remove the restrictions, *United States v. Allmon*, No. 4:04-cr-00169-BRW, Doc. # 833 (Doc. # 103-1) ('the history of this Defendant and case reveals the necessity of such restrictions").

Mr. Allmon initially alleged three claims for relief pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) against seven Defendants for: (1) violation of his First Amendment rights based on the alleged denial of access to the courts and interference with his legal mail; (2) violation of his Fifth Amendment procedural due process rights based on his transfer from the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute") to a "high intensity unit" at ADX; and (3) violation of his Eighth Amendment rights based on the conditions of confinement

at ADX.  (*See* "Prisoner Complaint" (Doc. # 3)).   On May 26, 2010, District Judge Weinshienk dismissed Defendants Bureau of Prisons, Nalley, Veach, and Brechbill from the action, dismissed Claim Three, dismissed Mr. Allmon's request for injunctive relief, and dismissed the portion of Claim One that alleged BOP staff's interference with his mail. (*See* "Order" (Doc. # 80)).

> As a result of this Order, the claims that remain in this case are: (1) Plaintiff's First Amendment retaliation claim against Defendant Braren, in her individual capacity, based upon alleged retaliation for Plaintiff's letter to Miles Davis, (2) Plaintiff's First Amendment retaliation claim against Defendants Church and Wiley, in their individual capacities, based upon Plaintiff's reassignment within ADX in November 2007, and (3) Plaintiff's Fifth Amendment due process claim against Defendants Church and Wiley, in their individual capacities, based upon Plaintiff's reassignment from a general population unit to a high security unit within ADX. The claims are for monetary damages only and not injunctive relief.

(*See id.* at 21 of 23).  Mr. Allmon seeks damages in the amount of $400,000.00 against each Defendant.  (*See* Doc. # 3 at 17 of 18).


II.   Standard of Review

Defendants Wiley, Church, and Braren move for summary judgment on Mr. Allmon's remaining Claims One and Two pursuant to Fed. R. Civ. P. 56.  "Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law."  *Montgomery v. Board of County Commissioners of Douglas County, Colorado*, 637 F. Supp. 2d 934, 939 (D. Colo. 2009) (internal quotation marks and citations omitted).

> Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  A factual dispute

is genuine and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.

When the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

When the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a prima facie claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.

*Sayed v. Profitt*, 743 F. Supp. 2d 1217, 1220-21 (D. Colo. 2010) (internal quotation marks and citations omitted).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted).  "[S]uch liberal construction is intended merely to overlook technical formatting errors and other defects in Plaintiff's use of legal terminology and proper English." *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1279 (D. Colo. 2009) (citation omitted).  The court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

As the Complaint has been sworn to under penalty of perjury (*see* Doc. # 3 at 17 of 18), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997).  Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue

of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted). *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).") (internal quotation marks and citation omitted).  "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).  The court must determine whether Mr. Allmon meets his burden of presenting specific facts to overcome Defendants' Motions.

Defendants raise the defense of qualified immunity.  Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).  "[W]e review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez*, 563 F.3d at 1088 (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).  Only if Mr. Allmon satisfies both of these prongs will the burden shift to Defendants to assume the normal burden of showing that there are no disputed material facts and that they are entitled to judgment as a matter of law. *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008).  If "the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).  *See also Wilder*, 490 F.3d at 813 ("If the [defendant]'s conduct did not violate a constitutional right, the inquiry ends and the

[defendant] is entitled to qualified immunity.") (citation omitted).   While it may be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, the order of those analytical steps is not  mandatory.  *See Pearson*, 129 S.Ct. at 818 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001)).

III.   Analysis

A.   No *Bivens* Remedy for Mr. Allmon's First and Fifth Amendment Claims

Mr. Allmon brings all of his claims pursuant to *Bivens*, 403 U.S. at 388.  In certain circumstances, federal officials may be held personally liable for monetary damages arising out of their commission of constitutional violations.   *See Bivens*, 403 U.S. at 388.   Mr. Allmon's claims against Defendants in their individual capacities for monetary relief are cognizable, if at all, under *Bivens*.   However, a *Bivens* remedy will not be allowed when other "meaningful safeguards or remedies for the rights of persons situated as [is the plaintiff]" are available.   *National Commodity and Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1248 (10th Cir. 1989) (internal quotation marks and citation omitted).   *See also Berry v. Hollander*, 925 F.2d 311, 315-16 (9th Cir.1991) ("Although these remedies do not guarantee full and independent compensation for constitutional violations suffered [,] . . . [w]hen Congress has created a statutory remedy for potential harms, the courts must refrain from implying non-statutory causes of actions such as *Bivens*.").

Since *Bivens*, which allowed an action for damages for a Fourth Amendment violation, the Supreme Court has recognized a *Bivens* remedy in only two types of cases: Eighth Amendment violations of the Cruel and Unusual Punishment Clause, *Carlson v. Green*, 446 U.S. 14 (1980), and Fifth Amendment violations of the equal protection component of the Due Process Clause, *Davis v. Passman*, 442 U.S. 228 (1979). *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 67 (2001).  "Since Carlson we have

consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68.  *Accord, Ashcroft v. Iqbal*, 129 S. Ct 1937, 1948 (2009).  The Supreme Court has not extended *Bivens* liability to First Amendment or Fifth Amendment retaliation claims.  In *Ashcroft v. Iqbal*, the Supreme Court noted that in *Bush v. Lucas*, 462 U.S. 367 (1983), it had "declined to extend *Bivens* to a claim sounding in the First Amendment." --- U.S. ----, 129 S. Ct. 1937, 1948 (2009).[2]  *See also Saleh v. United States*, 2011 WL 2682803 * 11 (D. Colo. March 8, 201l) ("until *Bivens* has been extended to First Amendment claims in this context, there is no legal basis to recognize any claim for damages against these Defendants in their individual capacities"), *Report and Recommendation adopted in part, overruled in part on other grounds*, 2011 WL 2682728 (D. Colo. July 3, 2011).[3]  *In Wilkie v. Robbins*, "the Supreme Court discussed the two-step process for determining whether to recognize a *Bivens* remedy and ultimately declined to permit the *Bivens* remedy for a Fifth Amendment retaliation claim. . . ." 551 U.S. 537, 550-61 (2007).  *Smith v. United States*, 561 F.3d 1090, 1101 n. 11 (10th Cir. 2009).

In determining whether a Bivens remedy should be recognized, "there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages" and "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counseling hesitation before authorizing a new kind of federal litigation." *Wilkie*, 551 U.S. at 550-1 (citation omitted).  "[T]here is no reason to rely on a court-created remedy, like *Bivens*, when Congress has created an adequate means

---

[2]   However, because "Petitioners [did] not press this argument" the Court "assume[d], without deciding, that respondent's First Amendment claim is actionable under *Bivens*." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. at 1948.

[3]   Copies of unpublished decisions cited and not previously provided as attachments to the Motions are attached to this Recommendation.

for obtaining legal redress." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005).   Here, an alternative process exists for legal redress.   A prisoner may seek injunctive relief against BOP officials, *Malesko*, 534 U.S. at 74, or he may pursue a remedy under the mandamus statute, 28 U.S.C. § 1361.   *See Simmat*, 413 F.3d at 1233-34. Second, in the procedural due process context, the appropriate remedy is not damages, but "procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).   Mr. Allmon may obtain such procedural protections through actions under the Administrative Procedure Act or the mandamus statute.   *Simmat*, 413 F.3d at 1233-34.  As to the First Amendment claim, these remedies are also adequate.  Mr. Allmon could have sought an injunction directing Defendants not to retaliate against him and to refrain from placing him in H Unit.   In fact, Mr. Allmon was transferred out of H Unit on July 28, 2009.  (See Declaration of Louis J. Milusnic, Exhibit A-1 to Defendants' Motion (Doc. # 92-1) at ¶ 8).   Given the Supreme Court's reluctance to recognize new *Bivens* remedies and the availability of alternative means to obtain relief for the alleged wrongs, Defendants are entitled to summary judgment on Mr. Allmon's claims.

Even if a *Bivens* remedy were available for Mr. Allmon's claims, Defendants further argue that they are entitled to qualified immunity.

A.      Claim One: First Amendment Retaliation against Defendant Braren

Mr. Allmon alleges retaliation by Defendant Braren based on an incident report she issued for a letter he attempted to mail to Miles Davis in November 2007.

Defendant Braren was employed as a technician in the Special Investigative Services ("SIS") department at the ADX from 1999 to 2010.  (*See* Declaration of Lisa Braren, Exhibit  B-1 to Defendant's Motion (Doc. # 93-2) at 2 of 39, ¶ 1).   As an SIS technician at the ADX, Defendant Braren's duties included monitoring inmate communications, including mail, telephone calls, and visits and assisting the ADX Special

Investigative Agent in investigations.  (*See id.* at ¶ 2).

Mr. Allmon was transferred to the ADX on October 3, 2007. (*See* Declaration of Louis J. Milusnic, Exhibit A-1 to Defendant's Motion (Doc. # 93-1) at 4 of 26, ¶ 5;  *id.* at Att. 1 (Doc. # 93-1) at 15 of 26).  Mr. Allmon was assigned to Ms. Braren's caseload from the time of his transfer to the ADX on October 3, 2007 through May 2010.  (*See* Doc. # 93-2 at 3 of 39, ¶ 3).  When he arrived at the ADX, Mr. Allmon was subject to communications restrictions that were ordered by the sentencing court.  (*See* "Court Order" Att. 1 (Doc. # 93-2) at 11 of 39). The Court Order prohibited Mr. Allmon from communicating, either directly or indirectly, with specific individuals, some of whom had testified against him in his criminal trial. (*See id.*).  Defendant Braren monitored Mr. Allmon's communications to ensure compliance with the Court Order.  (*See* Doc. # 93-2 at 3 of 39, ¶ 5).

On November 15, 2007, while monitoring outgoing mail, Defendant Braren intercepted a letter from Mr. Allmon addressed to an individual named Miles Davis at a California address ("Letter").  (*See* Doc. # 93-2 at 5 of 39, ¶ 14; 23-26 of 39).  In the Letter, Mr. Allmon stated that, because of the October 30, 2007 Incident Report, "it is now necessary that we include four BOP employees in the civil action complaint, *and place liens against their assets*."  (*See* Doc. # 93-2 at 5 of 39, ¶ 15; 25 of 39) (emphasis added). Defendant Braren understood the Letter as an attempt to solicit a third party to assist Mr. Allmon in illegally filing false liens against the assets of BOP employees, including her. (*See* Doc. # 93-2 at 5 of 39, ¶¶ 17-19).  ADX inmates are prohibited from possessing information that facilitates the filing of fraudulent liens.  (*See* Declaration of R. Wiley, Exhibit C-1 to Motion (Doc. # 93-3) at 7 of 14, ¶ 17; see also 11, 13-14 of 14).  Since at least July 2005, it has been standard practice for ADX staff to issue Incident Reports when an inmate makes an attempt to procure the filing of a fraudulent lien, whether directly or with the assistance of a third party.  (See Doc. # 93-3 at of 14, ¶19; 14 of 14).

Defendant Braren issued Mr. Allmon an Incident Report on November 15, 2007 for

violation of BOP prohibited acts §§ 298/203, interfering with a staff member in the performance of duties/most like threatening another with any other offense.  (*See* Doc. # 93-2 at 7 of 39 , ¶ 19; 28-29 of 39 (Incident Report # 1668791).  *See also* 28 C.F.R. § 541.13, Prohibited Acts and Disciplinary Severity Scale.

A hearing on the November 15, 2007 Incident Report was held before a Discipline Hearing Officer ("DHO") on December 13, 2007.  (*See* Doc. # 93-2 at 7 of 39, ¶ 20; 31-32 of 39 (DHO Report for Incident Report Number 1668791 dated February 1, 2008)).  The DHO found that, in attempting to send the Letter, Mr. Allmon "committed the prohibited act of interfering with a staff member in the performance of duties, most like threatening another with any other offense . . ." (*See* Doc. # 93-2 at 7 of 39, ¶ 21; 32 of 39).  The DHO also found that "[i]t is a Federal Crime, and a crime in the state of Colorado to file fraudulent instruments or liens of this nature."  *Id.*   Mr. Allmon received a sanction of 60 days loss of property and 60 days loss of visits.  (See Doc. # 93-2 at 8 of 39, ¶ 22).  A sanction of 30 days disciplinary segregation was suspended, pending 180 days of good conduct.  (*See id.*; Doc. # 93-2 at  B-1 at 35 of 39 (Inmate Discipline Data Chronological Disciplinary Record for Allmon, Dereck Isaac, referencing Incident Report # 1668791)).

Prison inmates have a First Amendment right both to send and receive mail. *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005).  That right, however, is not without limitations.  The Supreme Court has long recognized that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948), *overruled in part on other grounds, McCleskey v. Zant*, 499 U.S. 467 (1991).  "In the First Amendment context a corollary of this principle is that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Prisoner challenges to prison restrictions alleged to

violate First Amendment rights are therefore "analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Id.*

"[G]overnment action which chills constitutionally protected speech or expression contravenes the First Amendment." *Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996). Prison "officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted). *See also DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) (Even otherwise lawful action "taken in retaliation for the exercise of a constitutionally protected right violates the Constitution.") However, "an inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity." *Peterson*, 149 F.3d at 1144.

To establish a First Amendment retaliation claim, a prisoner must demonstrate that: "(1) he engaged in protected activity; (2) he suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Escobar v. Reid*, 668 F. Supp 2d 1260, 1275-76 (D. Colo. 2009) (citation omitted). *See also Nielander v. Bd. of County Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009) ("To establish a First Amendment retaliation claim, a plaintiff must show (1) that he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that  activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct.") (citation omitted).  The third component of the test means that Mr. Allmon must establish that "'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990). *See also Strope v. Cummings*, 382 Fed. Appx. 705, 710

(10th Cir. June 11, 2010) ("A prisoner claiming retaliation for exercising First Amendment rights must show that a retaliatory motive was the but-for cause of the challenged adverse action.") (citing *Peterson*, 149 F.3d at 1144 ("[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place.") (internal quotation marks and citation omitted)).   The inmate must make this showing by pleading specific facts demonstrating the causal connection. *Peterson*, 149 F.3d at 1144.   "[I]t is imperative that [a] plaintiff's pleading be factual and not conclusory.   Mere allegations of constitutional retaliation will not suffice; plaintiffs must, rather, allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."   *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).   To establish his claim for retaliation, Mr. Allmon must do more than simply state that he made complaints and was subsequently assigned to H Unit.   The burden of proving a retaliation claim is heavy.   *See Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) ("ultimate question is whether events would have transpired differently absent the retaliatory motive") (citation omitted).

The court concludes that Defendant Braren is entitled to summary judgment on Mr. Allmon's First Amendment retaliation claim on the basis of qualified immunity.   Mr. Allmon has not demonstrated that Defendant Braren violated his First Amendment rights or that a constitutional right was clearly established such that a person in Defendant Braren's position would have known that her conduct violated that right.   *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2008) (internal quotation marks and citations omitted).

First, "a prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction."   *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011) (citations omitted).

> If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary

> panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report. Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel.

*O'Bryant*, 637 F.3d at 1215.   Mr. Allmon suffered adverse action (temporary loss of property, temporary loss of visits and suspended assignment to disciplinary segregation) because he violated prison rules and not because he mailed a letter.  Mr. Allmon's attempt to obtain assistance in filing fraudulent liens is prohibited by prison regulations.  While mailing a letter is constitutionally protected conduct, the disciplined conduct in this case is separate and distinct from Mr. Allmon's conduct in the exercise of free speech.  Because he was found guilty of the disciplinary charges resulting in the disciplinary harm at issue, Mr. Allmon's retaliation claim fails.

Further, Mr. Allmon's retaliation claim being based on retaliation for his allegedly exercising his First Amendment rights and the filing of false disciplinary charges against him that ultimately resulted in sanctions, a judgment in his favor on his retaliation claim would necessarily imply the invalidity of his disciplinary convictions.  Mr. Allmon has not first successfully challenged that disciplinary conviction in a habeas proceeding before proceeding on his civil rights claim.  *See Miller v. Edminsten*, 161 Fed. Appx. 787 at * 1 (10th Cir. (Okla.) Jan. 6, 2006) (citing *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) and *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).

Next, even if Mr. Allmon's disciplinary conviction does not *per se* bar his First Amendment retaliation claim against Defendant Braren, his claim also fails for another independent reason.  Mr. Allmon has not established a causal connection between the mailing of his letter and the disciplinary conviction.  Believing a portion of the content of Mr. Allmon's letter violated prison rules, Defendant Braren prepared an Incident Report and submitted it for review.  (*See* Doc. # 93-2 at 28-29 of 39).  The charge was referred to the DHO.  Although Mr. Allmon defended against the disciplinary charge, the DHO determined

that a portion of Mr. Allmon's letter violated prison rules.  (*See id.* at 31-32 of 39).   The issue is whether there was a causal relationship between the mailing of Mr. Allmon's letter and the discipline meted out to him for the disciplinary charge.  *See Peterson*, 149 F.3d at 1144 ("[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place.") (internal quotation marks and citation omitted).   "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on [his motion for summary judgment as a matter of law or prior to trial on] summary judgment."  *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008) (internal quotation marks and citation omitted).   In other words, if the official can show that he would have taken the disciplinary action in the absence of the prisoner's protected conduct, he cannot be held liable.  *Smith v. Mosley*, 532 F.3d at 1278 n. 22.

Mr. Allmon has not presented evidence of retaliatory animus on the part of Defendant Braren.  Mr. Allmon presents no evidence his exercise of his right to mail the letter motivated Defendant Braren to write an Incident Report with regard to one portion of the letter.  In fact, Mr. Allmon states that Defendant Braren later mailed the letter to Mr. Davis, substantiating Defendant Braren's evidence that "[h]ad the Letter only contained a threat to sue Bureau employees, I would not have issued an Incident Report."  (*See* Doc. # 96 at 14, 28 of 33; Doc. # 93-2 at 7 of 39, ¶ 19).   Any possible causal connection between the protected activity of mailing the letter and the disciplinary charge and sanctions is severed since the harm was not in reaction to any protected activity, but directly due to an improper activity.   Stated another way, even if some impermissible reason had entered into Defendant Braren's decision-making process to charge Mr. Allmon with a disciplinary infraction, he would have been disciplined anyway, as the DHO concluded he committed the charged conduct which violated prison rules.  The evidence supports a conclusion that Defendant Braren would have acted as she did even absent Mr.

Allmon's protected conduct of mailing the letter.  Mr. Allmon does not present evidence of a "connection that bridge[s] the gap" between the official with the alleged retaliatory animus, Defendant Braren, and the official who issued the disciplinary sanction against him, the DHO.  *See McBeth v. Himes*, 598 F.3d 708, 717 (10th Cir. 2010) (defendant who allegedly acted with retaliatory animus not same individual as one who caused plaintiff's injury).

As to the second part of a qualified immunity analysis, the law is not clearly established that it was unlawful to submit an Incident Report regarding the portion of Mr. Allmon's letter that violated prison rules.  No Tenth Circuit or Supreme Court authority indicated that Defendant Braren's actions violated Mr. Allmon's constitutional rights.  To the contrary, within approximately six weeks of the date of Mr. Allmon's letter, a newly-enacted federal statute criminalized the conduct contemplated in the letter.  *See* Court Security Improvement Act of 2007, 18 U.S.C. § 1521, effective January 7, 2008. Before Defendant Braren issued the November 15, 2007 Incident Report, the House Judiciary Committee issued a report on the proposed amendments to the Court Security Act of 2007, including section 1521. See H.R. Rep. No. 110-218 (July 10, 2007).

Mr. Allmon's argument that he did not possess the requisite intent to file a false lien that could have resulted in his conviction under Section 1521 is irrelevant to the question of whether Defendant Braren is entitled to qualified immunity.  (*See* Doc. # 80 at 8 of 22). The qualified immunity doctrine evaluates whether Defendant Braren's conduct was reasonable, not whether Mr. Allmon's motives were innocent.  No reasonable officer in Defendant Braren's position could have believed that it was unlawful to initiate a disciplinary action against Mr. Allmon under the circumstances presented.  An objective prison official standing in Defendant Braren's shoes could reasonably conclude that Mr. Allmon was attempting to solicit assistance in filing a spurious lien against BOP employees' personal assets, a matter that could impede the prison's penological objectives.  It was the

practice of the SIS Department to issue Incident Reports under those circumstances. Defendant Braren acted in accordance with ADX practice for addressing attempts to file spurious liens against government officials. She confirmed with her supervisor that it was in fact SIS practice at the ADX to issue Incident Reports when inmates seek to file fraudulent liens against government officials, including BOP personnel. (*See* Doc. # 93-2 at 6 of 39, ¶ 18). Such practice does not violate an inmate's First Amendment rights. *See, e.g., Monroe v. Beard*, 536 F.3d 198, 208-09 (3d Cir. 2008) (upholding summary judgment against inmates' First Amendment challenge to designating legal materials related to filing fraudulent liens as contraband); *Edmonds v. Sobina*, 296 Fed. Appx. 214, 217 (3d Cir. 2008) (upholding grant of summary judgment holding that prison policy of restricting an inmate's possession of UCC-related materials did not violate his First Amendment rights); *Slusher v. Samu*, 2008 WL 791959, * 8(D. Colo. Mar. 21, 2008) (finding prison official entitled to qualified immunity as there was no existing law that First Amendment protection extended to a letter that could reasonably be construed as expressing inmate's intent to file fraudulent liens or putting prison official on notice that his conduct was unconstitutional). There is no basis for the court to second-guess the prison's rules. *See Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009) ("Issues involving the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security in most circumstances should be accorded wide-ranging deference.") (internal quotation marks and citations omitted). Defendant Braren is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

B.     Claim One: First Amendment Retaliation against Defendants Church and Wiley

Mr. Allmon bases his First Amendment Retaliation claim against Defendants Church and Wiley on his reassignment from the general population at ADX to the high security H

Unit at ADX on November 28, 2007.  (*See* Doc. # 80 at 10 of 22, Doc. # 96 at 3 of 33, Doc. # 3 at 8 of 18).[4]  The First Amendment right Mr. Allmon claims to have exercised is that he made written and verbal complaints to Defendants Church and Wiley about Defendant Braren and the Assistant United States Attorney who prosecuted him.  (*See* Doc. # 80 at 9 of 22, Doc. # 3 at 7 of 18 ("On or about Nov. 23, 2007, Plaintiff lodged verbal and written complaints against Lisa Braren with her superiors . . . Plaintiff also lodged written complaints against AUSA Jane Duke . . . .")).[5]

Mr. Allmon was transferred to the ADX on October 3, 2007.  (*See* Doc # 92-1 at 3-4 of 26, ¶¶ 3, 5; Att. 1 (Doc. # 92-1) at 15 of 26 (Inmate History Quarters for Allmon, Dereck Isaac)).  Neither Defendant Wiley nor Defendant Church was involved in any way in the decision to transfer Mr. Allmon to the ADX.  (*See* Declaration of R. Wiley, Exhibit B-1 to Motion (Doc. # 92-2) at 2-3 of 14, ¶ 3; Declaration of Harvey G. Church, Exhibit C-1 to Motion (Doc. # 92-3) at 3 of 7, ¶ 6).  Mr. Allmon was initially housed in the ADX Special Housing Unit ("SHU"), or "Z Unit," while awaiting formal placement at the institution.  (*See* Doc. # 92-1 at Ex. A-1 at ¶ 5; Att. 1 at 1. It is institutional practice to house inmates in the SHU upon their arrival at ADX, pending a review to determine suitability of housing.  (*See* Doc. # 92-1 at 4 of 26, ¶ 5).

When Mr. Allmon arrived at the ADX, he was subject to a court order prohibiting him from communicating with numerous individuals.  (*See* Doc. # 92-1 at 4 of 26, ¶ 6; 20 of 26).  The ADX is the most secure prison in the federal system and is designed to house inmates who require an uncommon level of security.  (*See* Doc. # 92-1 at 4-5 of 26, ¶ 9).  Mr.

---

[4]  Although Mr. Allmon makes arguments that he was improperly transferred from the United States Penitentiary at Terre Haute to the ADX (*see* Doc. # 96 at 2, 5, 19 of 33), such a claim is not included in this lawsuit.  (*See* Doc. # 80 at of 10 of 22, Doc. # 96 at 3 of 33).

[5]  For purposes of the motion for summary judgment, Defendants do not dispute that any complaint Mr. Allmon may have made about law enforcement officials was entitled to First Amendment protection.

Allmon was assigned to the ADX Special Security Unit, also known as H Unit, from November 28, 2007 until July 28, 2009, when he was transferred due to space needs in H Unit. (*See* Doc. # 92-1 at 4 of 26, ¶¶7, 8; 15 of 26). Mr. Allmon was subsequently housed in a unit with other inmates who are subject to court-ordered communications monitoring. (*See id.*).

In November 2007, all ADX inmates with court-ordered communications restrictions or Special Administrative Measures (SAMs) (see 28 C.F.R. § 501.3) were housed in a single unit (H Unit) to ensure that they were not able to transmit unauthorized communications through other inmates whose communications were not similarly restricted, decreasing the risk that those inmates could disseminate dangerous communications that could jeopardize the safety of BOP personnel or persons outside the institution. (*See* Doc. # 92-2 at 3-4 of 14, ¶ 7; Doc. # 92-3 at 4 of 7, ¶ 9). Mr. Allmon's communications restrictions were subsequently increased by the trial court because Mr. Allmon "continued to attempt to circumvent these orders and is sometimes successful in slipping his letters past BOP review." *United States v. Allmon*, 2010 WL 936560, at *1. *See also, e.g.,* Docs. # 29, # 33 (**sealed**), # 37, # 38 (for "over two years" Mr. Allmon has mailed "Murders by Snitches Ignored . . .around the world"), # 51, # 70; *United States v. Allmon*, No. 4:04-cr-00169-BRW, Doc. # 833 (Mr. Allmon "continues to attempt to use his influence with his associates to kill anyone he believes has wronged him. And history shows that Defendant has the ability [to] orchestrate violence while incarcerated."). In addition to Mr. Allmon's court-ordered communications monitoring, Defendant Wiley was aware of significant information showing that he posed a threat to the safety and security of both BOP personnel and persons outside the institution. (*See* Doc. # 92-2 at 4 of 14, ¶ 8). In November 2007, Defendant Wiley was aware of information that Mr. Allmon had ordered hits on witnesses who testified against him, had engaged in other threatening behavior toward government witnesses, had attempted to use other inmates to help him

transmit communications outside the institution, had made death threats against law enforcement agents, Assistant United States Attorneys ("AUSAs"), family members of law enforcement agents and AUSAs, and at least one BOP staff member, and had directed two attacks against other inmates while incarcerated in another BOP facility, one of which was in retaliation for the inmate victim's cooperation with the government in Mr. Allmon's criminal case.  (*See id.* at ¶¶ 8-9).

The court concludes that Defendants Church and Wiley are entitled to summary judgment on Mr. Allmon's First Amendment retaliation claim on the basis of qualified immunity.  Mr. Allmon has not demonstrated that Defendants Church or Wiley violated his First Amendment rights or that a constitutional right was clearly established such that a person in their position would have known that their conduct violated a constitutional right. *Graves v. Thomas*, 450 F.3d at 1218 (internal quotation marks and citations omitted).

First, the evidence demonstrates that Mr. Allmon was not assigned to a general population unit at the ADX before his placement in H Unit.  (*See* Doc. # 92-1 at 15 of 26; Doc. # 92-2 at 5 of 14, ¶ 11; Doc. # 92-3 at 5 of 7, ¶ 11).  There is no evidence that any ADX personnel informed Mr. Allmon, either verbally or in writing, that he had been assigned to G Unit.  Both the October 30, 2007 and November 15, 2007 Incident Reports identify Mr. Allmon's unit as Z Unit.  (See Doc. # 93-2 at 18, 28 of 39).  There is no evidence that any Defendant was aware of Mr. Allmon's belief that he was assigned to a "G" or "G/Z" Unit.  Prison records show that while Mr. Allmon was later assigned to other units, such as D Unit, he was never assigned to "G" or "G/Z" Unit.  (*See* Doc. # 93-1 at 15 of 26).  Mr. Allmon refers to a November 1, 2007 written response to his complaint to an ADX Associate Warden that refers to "G/Z Unit."  (*See* Doc. # 96-2 at 32 of 42).  According to Mr. Allmon, this document shows that he was assigned to a general population unit. However, Mr. Allmon provides no evidence indicating that the person who typed the response did anything other than retype the unit that Mr. Allmon wrote on his initial

complaint.   (See Doc. # 96-2 at 31 of 42; *see also* 34, 35 of 42).   All of the other documentation that Mr. Allmon argues shows his alleged assignment to "G Unit" was written by him, while he was in fact assigned to Z Unit when each of those documents was prepared.  (*See* Doc. # 92-1 at 15 of 26).   As the evidence does not demonstrate that Mr. Allmon was ever assigned to G Unit, Defendants Church and Wiley are entitled to summary judgment on Mr. Allmon's claim that his assignment to H Unit was in retaliation for his exercise of his First Amendment rights.

Next, Mr. Allmon does not demonstrate that his assignment to H Unit was substantially motivated as a response to his complaints about Defendant Braren and the AUSA who prosecuted him.  *See Smith v. Maschner*, 899 F.2d at 949-50 (Mr. Allmon must establish that "'but for' the retaliatory motive, the incidents to which he refers, . . . would not have taken place.").  Mr. Allmon has not refuted the evidence that neither Defendant Wiley nor Defendant Church ever spoke with the AUSA about any issue related to Mr. Allmon, including where he would be housed within ADX.  (*See* Doc. # 92-3 at 5 of 7, ¶¶ 12;  Doc. # 93-3 at 5 of 14, ¶¶ 12, 13).  Mr. Allmon's conclusory and speculative allegations are not sufficient to refute the evidence that any complaint he made about the prosecuting AUSA or Defendant Braren had no impact on the decision to place Mr. Allmon in H Unit in November 2007.  (*See* Doc. # 92-3 at 5 of 7, ¶ 13; Doc. # 93-3 at 6 of 14, ¶¶ 13, 14).  Mr. Allmon's arguments do not raise a dispute about a material issue of fact.  The evidence shows that Mr. Allmon's assignment to H Unit in November 2007 was made for the purpose of facilitating the goals of safety and security by effectively monitoring his communications.   Mr. Allmon has not presented sufficient evidence that "but for" his complaints about Defendant Braren and the AUSA, he would not have been assigned to H Unit.  As Mr. Allmon has failed to demonstrate that his "verbal and written complaints" were the "but for" cause of his transfer, he fails to meet his burden on summary judgment as to his claim for retaliation.  *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir.

1998) (inmate's "allegations of retaliation must fail because he has presented no evidence that the defendants' alleged retaliatory motives were the 'but for' cause of the defendnats' actions.").

Even if Mr. Allmon could show a constitutional violation, he has not produced evidence to meet the "clearly established" prong of his qualified immunity burden, that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." *See Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) (internal quotation marks and citation omitted). Summary judgment based on qualified immunity is warranted here because no Supreme Court or Tenth Circuit authority put Defendants Church or Wiley on notice that their decision to assign Mr. Allmon, an inmate with communications restrictions, in H Unit with other inmates with communications restrictions, would be "clearly unlawful." *Id.* Defendants Wiley and Church could not reasonably have known in November 2007 that Mr. Allmon's housing assignment to H Unit based on the prison's safety and security needs would violate his constitutional rights. *See Sandin v. Conner*, 515 U.S. 472, 482-83 (1995) (noting that courts should give deference to the decisions related to safety made by federal prison officials); *Rhodes v. Chapman*, 452 U.S. 337, 349 n. 14 (1981) ("[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators."); *Bell v. Wolfish*, 441 U.S. 520 (1979) (holding that prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve the internal order and discipline and to maintain institutional security). Defendants Church and Wiley are entitled to qualified immunity on Mr. Allmon's First Amendment retaliation claim.

C.     Claim Two: Fifth Amendment Claim against Defendants Church and Wiley

Mr. Allmon also bases his Fifth Amendment due process claim against Defendants Church and Wiley on his reassignment from the general population at ADX to the high

security H Unit at ADX in November 2007. (*See* Doc. # 80 at 21 of 22, Doc. # 96 at 3 of 33, Doc. # 3 at 13 of 18). To state a due process claim, Mr. Allmon must allege two elements: (1) that a recognized liberty or property interest has been interfered with by the Defendants, and (2) that the procedures attendant to that deprivation were not constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). Defendants Church and Wiley assert they are entitled to summary judgment on Mr. Allmon's Fifth Amendment due process claim on the basis of qualified immunity. Defendants contend that Mr. Allmon has not sufficiently demonstrated a due process violation because he has demonstrated no loss of a liberty interest.

Prisoners retain " 'only a narrow range of protected liberty interests.' " *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994) (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1982), *overruled in part on other grounds by Sandin*, 515 U.S. at 472). The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). *See also Hewitt*, 459 U.S. at 468 ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all."); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (Tenth Circuit has explicitly held that "the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.") (internal quotation marks and citation omitted); *Frazier v. Dubois*, 922 F.2d at 561-62 ("a prisoner enjoys no constitutional right to remain in a particular institution and

generally is not entitled to due process protections prior to such a transfer. . . .").

Prior to 1995, the existence and scope of an inmate's liberty interest, and therefore whether there was a due process violation, was determined by the language of the applicable regulations.  However, in *Sandin v. Conner*, the United States Supreme Court held that the touchstone of the inquiry into whether a protected liberty interest exists is whether the conditions "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  515 U.S. at 484, *implicitly overruled on other grounds by Edwards v. Balisok*, 520 U.S. at 641.  An inmate contending that the conditions of confinement give rise to a constitutionally-protected liberty interest must show that the conditions constitute an "atypical and significant hardship" when compared to the ordinary incidents of prison life.  *Wilkinson*, 545 U.S. at 223.  *See also Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) ("[T]he Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484).  Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

The Tenth Circuit has applied several factors in analyzing whether conditions impose such an atypical and significant hardship that a liberty interest exists.  These factors include whether: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . . ; and (4) the placement is indeterminate . . . ." *Estate of DiMarco v. Wyo. Dept. of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).  "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal

courts." *Id.* The existence of a liberty interest is a threshold issue. *See Templeman v. Gunter*, 16 F. 3d 367, 371 (10th Cir. 1994) (without a liberty interest, "no particular process [is] constitutionally required).

First, the evidence shows that Mr. Allmon's criminal history supported his placement in H Unit at ADX in November 2007, based on legitimate penological interests of safety and security for persons both inside and outside the ADX. (*See* Doc. # 92-2 at 3-5 of 14, ¶¶ 5-11; *United States v. Allmon*, 500 F.3d at 803; *United States v. Allmon*, 2010 WL 936560 (E.D. Ark. March 15, 2010); *United States v. Allmon*, Case No. 4:04CR00169-01-WRW (Doc. # 20-2). This first factor weighs in Defendants' favor based on Mr. Allmon's significant history of criminal conduct and conduct even while incarcerated.

Second, no clearly established law directed Defendants that any process was due prior to Mr. Allmon's assignment to H Unit. Neither the Supreme Court nor the Tenth Circuit has ever found that inmates of the BOP have a constitutionally protected liberty interest in avoiding any ADX unit, including H Unit. To the contrary, "every court that has addressed ADX conditions on summary judgment has unanimously found that such conditions are not atypically restrictive." *Saleh v. Federal Bureau of Prisons*, 2010 WL 5464295, *7 (D. Colo. Nov. 23, 2010) (citing *Jordan v. Federal Bureau of Prisons*, 191 Fed. Appx. 639, 652 (10th Cir. 2006) (finding restrictions in administrative maximum confinement did not impose atypical and significant hardship in relation to the ordinary incidents of prison life)), *Report and Recommendation Adopted by*, 2010 WL 5464294 (D. Colo. Dec. 29, 2010). *See also Rezaq v. Nalley*, 2010 WL 5157313, *8-11 (D. Colo. Dec. 14, 2010) (adopting Recommendation of United States Magistrate Judge, including conclusion that "to date no court in the Tenth Circuit has held that the conditions at ADX, regardless of unit, implicate a liberty interest."); *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1171-73 (D. Colo. 2010) ("conditions at ADX have previously been determined not to give rise to a protected liberty interest"); *Georgacarakos v. Wiley*, 2010 WL 1291833 at *11-13

(D. Colo. Mar. 30, 2010) (finding conditions of confinement in General Population unit of ADX do not "constitute an atypical and significant hardship sufficient to give rise to a liberty interest); *Ajaj v. United States*, 293 Fed. Appx. 575, 586 (10th Cir. 2008) (holding that a prison official was entitled to qualified immunity on a procedural due process challenge to inmate's transfer to the ADX). "[W]e have no qualm in concluding that the law was not clearly established as to whether Plaintiff had a protected liberty interest in avoiding transfer to ADX in 2002." *Ajaj*, 293 Fed. Appx. at 586 (citations omitted). *See also Muhammed v. Hood*, 100 Fed. Appx. 782, 783 (10th Cir. 2004) (no protected liberty interest in avoiding placement in an ADX general population unit); *Muhammad v. Finley*, 74 Fed. Appx. 847, 849 (10th Cir. 2003) (upholding district court's dismissal of an inmate's claim that disciplinary segregation at the ADX implicated a liberty interest). *See also, e.g., DiMarco*, 473 F.3d at 1343 (deprivations resulting from confinement in administrative segregation did not impose such an atypical and significant hardship as to meet the *Sandin* standard); *Lekas v. Briley*, 405 F.3d 602, 610-13 (7th Cir. 2005) (conditions of cell size, religious access/freedom, visiting procedures and telephone, opportunity for exercise and out-of-cell activity, commissary restrictions, access to both general and legal libraries, access to radio and television, access to legal property, meal procedures, and showers and other hygiene needs did not impose an atypical and significant hardship); *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996) (placement in administrative segregation did not give rise to a liberty interest); *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1995) (an inmate's confinement in disciplinary segregation where he experienced frequent lockdowns, restricted access to the law library, denial of educational opportunities, and loss of social and rehabilitative activities did not impose an atypical or significant hardship).

There was therefore no clearly established law that Mr. Allmon had a protected liberty interest in his assignment to ADX's H Unit.  No reasonable officer in Defendants' position would have had notice that Mr. Allmon was entitled to process before he could be

assigned to H Unit.  It is Mr. Allmon's burden to produce evidence to meet both prongs of the test for qualified immunity.  *See Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004) (plaintiff bears heavy two-part burden when defense of qualified immunity is raised in a summary judgment motion).  The court concludes that Mr. Allmon has not demonstrated that a constitutional right was clearly established.  While the court need go no further to find that Defendants are entitled to qualified immunity on the due process claim, *see Toevs v. Reid*, 646 F.3d 752 (10th Cir. June 20, 2011) (defendants entitled to judgment based on qualified immunity because the law was not clearly established), it also determines that the evidence does not demonstrate that Mr. Allmon's conditions of confinement gave rise to a constitutionally-protected liberty interest in avoiding placement in H Unit.

The evidence shows that the conditions of confinement in H Unit do not differ in any meaningful way from those in other ADX units and do not implicate a liberty interest.  Mr. Allmon's general allegations of restricted liberty, amenities, recreation, visitation and privileges fail to demonstrate conditions of confinement that are sufficiently atypical or significant in relation to the ordinary incidents of prison life to create  a liberty interest. Among Mr. Allmon's complaints are: the commissary list for H Unit inmates is more restrictive than the list for general population inmates; the H Unit hours for visits, making telephone calls and using the library are not convenient; the reading materials for H Unit inmates are more restricted than those for general population inmates; H Unit inmates receive two showers per week; recreation for H Unit inmates occurs early in the morning; H Unit inmates are restrained and searched when they leave their cells; and H Unit inmates do not have color televisions in their cells.  (*See* Doc. # 96 at 10-11,15-17 of 33). Mr. Allmon's complaints about H Unit are minor matters of degree.  He does not show any significant difference between the conditions of confinement in H Unit and other ADX units that courts have considered in finding no protected liberty interest. (*See* Doc. # 92-1 at 5-

of 26, ¶¶ 9-24).

Nor does Mr. Allmon's claim that he was not allowed to participate in the Special Security Unit Program for H Unit inmates show that he has been deprived of a protected liberty interest. (*See* Doc. # 96 at 25 of 33).  The evidence indicates that, as an H Unit inmate, Mr. Allmon had access to the Special Security Unit Program, the counterpart program to the ADX general population Step-Down Program, which permits increased privileges as an inmate advances through the program. (*See* Doc. # 92-1 at 9-11 of 26, ¶¶ 25-36).  Even accepting as true Mr. Allmon's allegation that he "never had any opportunity to participate in a three phase Step-Down Program," neither an inability to participate in the Special Security Unit Program nor ineligibility for the Step-Down Program for ADX general population inmates shows that the conditions in H Unit deprived him of a protected liberty interest. *See, e.g., Bradshaw v. Lappin*, 738 F. Supp. 2d 1143, 1155 (D. Colo. 2010) (no liberty interest associated with loss of access to ADX step-down program); *Muhammad v. Hood*, 100 Fed. Appx. at 783 (removal of inmate from stepdown program to more restrictive unit does not create a liberty interest).

Given the lack of any substantial differences between conditions of confinement in H Unit and in ADX general population and administrative segregation units, Mr. Allmon was not subjected to conditions that impose atypical and significant hardship and thus give rise to a constitutionally-protected liberty interest.   A reasonable officer could have concluded that clearly established law did not require that Mr. Allmon be provided process before he was assigned to H Unit in November 2007.  This second factor thus weighs in Defendants' favor.

As to the third enumerated factor, the evidence supports the District Judge's previous determination that Mr. Allmon's "confinement at ADX does not affect the length of his sentence." (*See* Doc. # 80 at 14 of 22; Doc. # 92-1 at 5 of 26, ¶ 32 ("[a]n inmate's incarceration at the ADX, including in H Unit, does not impact the duration of his sentence;

his parole eligibility; or his good-time credits."). Further, given that he is serving multiple life sentences plus five years, the assignment to H Unit did not increase the duration of Mr. Allmon's sentence. *See Toevs*, 646 F.3d at 752 (placement in segregation did not increase duration of confinement of inmate serving a life sentence). This "crucial factor" weighs strongly against finding a liberty interest. *See Saleh*, 2010 WL 5464295 at *13; *DiMarco*, 473 F.3d at 1342.

As to the fourth enumerated factor, Mr. Allmon has not demonstrated that his placement in H Unit at ADX is indeterminate or indefinite. An inmate's placement is not indefinite if the inmate receives regular opportunities for review of the conditions. *See DiMarco*, 473 F.3d at 1343-44 (finding that confinement not indefinite where inmate had regular evaluations with a management team who interviewed her and allowed her to present her views); *Rezaq v. Nalley*, 2010 WL 5157317, *12 (D.Colo. Aug. 17, 2010) (holding that status not indeterminate where inmate participated in six-month reviews with his unit team). Mr. Allmon had bi-annual program reviews to address his conditions in H Unit. (*See* Doc. # 92-1 at 10-11 of 26, ¶¶ 32, 35). Mr. Allmon's argument that he refused to sign the six-month program reviews (*see* Doc. # 96 at 12, 25 of 33) does not show that the reviews were not provided. Mr. Allmon's argument that there is no "opportunity to voice or present issues, nor participate in any so-called program review because most ADX staff has such arrogant, unconcerned attitudes . . . ." (*see* Doc. # 96 at 26 of 33) is not sufficient to establish that the reviews were not provided. *See MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) ("[u]nsupported conclusory allegations . . . do not create an issue of fact" in response to a motion for summary judgment). In July 2009, Mr. Allmon was moved to an ADX general population unit. (*See id.* at 4 of 26, ¶ 8). The evidence demonstrates that Mr. Allmon's assignment to H Unit was not indefinite. The fourth factor favors Defendants.

Under the four factors for evaluating the existence of a liberty interest set forth in

*DiMarco*, Mr. Allmon fails to show the existence of a liberty interest in his placement in H Unit.  473 F.3d at 1342.  Defendants Church and Wiley are entitled to qualified immunity on Mr. Allmon's procedural due process claim because there was no clearly established law in November 2007 holding that placement in H Unit created a constitutionally-protected liberty interest for which process was required.  It could not have been clear to a reasonable officer in Defendants' position that Plaintiff was entitled to process before he could be assigned to H Unit.  *See Bowling*, 584 F.3d at 964 ("clearly established" prong of the qualified immunity analysis assesses "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation").  Defendants Wiley and Church are entitled to qualified immunity on Mr. Allmon's procedural due process claim.

Accordingly, IT IS RECOMMENDED that:

1.      Defendants Wiley and Church's Motion for Summary Judgment (Doc. # 92) (filed January 18, 2011) be GRANTED.

2.      Defendant Braren's Motion for Summary Judgment (Doc. # 93) (filed January 18, 2011) be GRANTED.

3.      Summary judgment be entered on the Complaint (Doc. # 3) in favor of Defendants and against Plaintiff, with each party to pay his or her own fees and costs.

4.      As the court did not consider Mr. Allmon's Exhibits A or C (Docs. # 104 and # 105) in issuing this Recommendation, "Defendants' Motion to Strike Exhibits A and C . . ." (filed May 26, 2011) (Doc. 106) is DENIED as moot.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of

Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 25th day of August, 2011.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge